Alfred A. JULIAN and L. Berniece Julian, Plaintiffs-Respondents,

v.

Chester KIEFER and Geraldine Kiefer, Defendants-Appellants.

No. 24047.

Kansas City Coourt of Appeals.

Missouri.

Oct. 5, 1964.

Sniczek & Jones, Kansas City, for appellants.

Poague, Brock & Wall, Clinton, for respondents.

CROSS, Judge.

Plaintiff Alfred A. Julian, a building contractor, entered into a written contract with defendant property owners to build a dwelling house for the total price of $27,200.00. He duly entered upon the agreed undertaking and completed the structure substantially in accordance with the contract plans and specifications. During progress of the work defendants made monthly payments, upon the builder's request and presentation of bills for labor and materials, totalling $25,000.00. After the house was completed the contracting parties were unable to agree as to the balance owed by defendants. Thereafter this action was filed by plaintiffs Alfred A. Julian and Berniece Julian, who are husband and wife, and who claim to be building contractors in partnership.

Plaintiffs' petition does not plead for a recovery under the contract, but sounds in quantum meruit. Its allegations are to the effect that the parties entered into a written contract, as above noted; that after plaintiffs had partially completed the work called for, defendants abandoned the contract, took charge of the project, ordered the materials, changed the plans, instructed the workers and did not permit plaintiffs to continue construction of the house under the terms of the contract; and, that plaintiffs had furnished materials and performed work and labor to the benefit of defendants in the sum and value of $35,767.03. Allowing defendants credit for $25,000.00 paid during the course of the work, plaintiffs pray judgment for the claimed balance of $10,767.03 and for a statutory lien on defendants' real estate.

Defendants filed an answer and a counterclaim. In their answer, defendants denied they had abandoned the contract and affirmatively charged that any recovery by plaintiffs in excess of $25,000.00 must be computed in accordance with the contract. The counterclaim charges that plaintiffs failed to construct the house in a workmanlike manner and of good quality materials in accordance with the terms of the contract; that as a consequence the structure is defective; and, further, that plaintiffs omitted items of construction called for by the contract, and have failed and refused to remedy such defects and omissions—all to defendants' damage in the sum of $7,500.00, for which they pray judgment. The allegations of defendants' counterclaim are denied by plaintiffs.

By stipulation of the parties the case was tried to the court. After hearing extensive evidence the trial judge concluded that "the ignoring of the terms of the contract by the parties, both plaintiffs and defendants, who did not protest or require compliance with the terms of the contract, constituted an abandonment of the contract", and that plaintiffs were entitled to recover under their petition.

Judgment was entered in favor of plaintiffs on their petition demand, in the sum of $7,109.70, and a statutory lien for like amount was decreed as against defendants' property. Additionally the trial court rendered judgment against defendants on their counterclaim and dismissed the pleading. Defendants appeal.

It is here contended by defendants that the trial court erred in finding as a fact and as a conclusion of law that the contract had been abandoned because (1) the final construction was substantially in accordance with the contract, (2) the parties at all times treated the contract as being in force, and (3) the evidence was insufficient to establish plaintiffs were prevented, by defendants' interference, from completing the contract. Defendants insist that the contract remained in full force and effect, that the extent of plaintiffs' recovery should have been computed in accordance therewith, and that the judgment is erroneous because it awards plaintiffs a sum in excess of the contract price and is otherwise unsupported by the evidence.

On behalf of plaintiffs it is urged that the trial court was justified in finding and concluding as a matter of law that there had been an abandonment of the contract because (a) the conduct of defendants indicated their intention to abandon the written undertaking of the parties, and (b) the action and conduct of both parties indicated they considered the contract as abandoned. Plaintiffs contend that the judgment is proper and adequately supported by the evidence.

Thus, the primary and essentially determinative question on which the parties have drawn issue is whether the contract was abandoned or has remained in effect. In resolving this issue we first direct attention to the written instrument involved and to the circumstances surrounding its execution by the parties.

In planning the dwelling they wished to build, defendants consulted and employed an architect, Mr. Ellis Jones. The architect designed the structure, and prepared complete building plans consisting of six sheets of detailed drawings which provide that the construction thereunder "shall comply with the Federal Housing Administration's Minimum Property Requirements in their entirety". Defendants submitted these plans to plaintiff Alfred A. Julian and four

other contractors for bids. After the expiration of approximately ten days, Mr. Julian submitted his bid in the sum of $27,-200.00 and thereby became the successful bidder. Defendants so informed the architect, who thereafter met with plaintiffs and defendants, at the home of the former, to assist the parties in making a contract.

The proposed written agreement was prepared by Mr. Jones on a standard form approved by the American Institute of Architects, and entitled "Agreement and General Conditions Between Contractor and Owner". The document designates plaintiff Alfred A. Julian as the "Contractor" and both defendants as "Owners", provides that "the Contractor shall furnish all of the materials and perform all of the work * * * as shown on the drawings and described in the specification * * *" and obligates the owners to pay the contractor the sum of $27,200.00 "for the performance of the contract subject to the additions and deductions provided therein". The specifications provided in the contract document are "F.H.A. Minimum Property Requirements".

Other material provisions of the instrument are as follows:

"The Contractor shall permit and facilitate inspection of the work by the Owner and his agents and public authorities at all times", * * *.

"The Owner may order changes in the work, the Contract Sum being adjusted accordingly. All such orders and adjustments shall be in writing. Claims by the Contractor for extra cost must be made in writing before executing the work involved". * * *

"The Owner shall make payments * * * on request by contractor, but not to be more than once per month, and on a set date, allowing the owner 10 days to pay only receipted bills". * * *

"The Architect shall have general supervision of the work. He has author--

ity to stop the work if necessary to insure its proper execution. He shall certify to the Owner when payments under the contract are due and the amounts to be paid. * * *"

After some preliminary discussion the written agreement was signed by both defendant property owners and by plaintiff Alfred A. Julian, but plaintiff Berniece Julian refused to sign the instrument. The entire contract consists of the written agreement and general conditions contained therein, together with the drawings and the specifications referred to above.

It appears that contractor Julian entered into the written undertaking with mental reservations. He testified that when he "agreed to build this house for $27,200.00" he knew it would cost more money than that sum to build it according to the plans, and that he arrived at the figure of $27,200.00 for bid purposes by generally cheapening the construction, by using cheaper materials than specified and by "cutting off" from the plans numerous items of construction and finish shown and detailed thereon which he now refers to as "extras". Julian claims that he informed defendants of these deletions and omissions at the time he submitted his bid, and that they accepted his bid with the understanding that he was at liberty to "cut everything off that I could cut off" from the architect's plans in order to build the house for the sum of $27,200.00. Julian testified that he discussed these changes and eliminations with defendants and their architect both prior to and after the signing of the contract, and told them what he had eliminated from the plans in arriving at his bid figure. It is claimed by Julian that defendants (and their architect) were "satisfied" with the omissions and substitutions and agreed thereto both before the formal execution of the written contract and again after the parties had signed it.

■ Julian now suggests that those alleged oral agreements are binding upon the parties and constitute effective modification of the written contract. Such view of the transaction is untenable. It is elementary that any discussion, negotiation or agreement by the parties before entering into the written contract are merged and consolidated into that undertaking. Poe v. Illinois Central R. Co., 339 Mo. 1025, 99 S.W. 2d 82. Nor do we believe that defendants made any oral agreement amounting to a modification of the contract *after* it was signed by the parties on the occasion in question. Although both Mr. and Mrs. Julian so testify, both defendants and their architect deny that any agreement was made in derogation of the written contract immediately after its execution. We question the probability of plaintiffs' testimony on this fact issue and find that the written contract is a complete and exclusive expression of the entire agreement reached by the parties.

■ We consider that the parties entered upon the subject undertaking fully and completely bound by the terms of the written contract and that their respective rights and duties were governed and defined solely by that instrument. And, if it be established herein that there has been no abandonment of the contract and that plaintiffs have fully performed the contract on their part, the amount of plaintiffs' compensation and recovery thereof will be limited to the agreed contract price. The rule applicable here is well established and is stated in Taetz, Inc. v. Groff, 363 Mo. 825, 253 S.W.2d 824, as follows: " 'But where, as here, an express contract has been fully performed on plaintiff's part, and nothing remains to be done under it but the payment of money by defendant, which is nothing more than the law would imply, plaintiff may declare specially on the contract, or generally in indebitatus assumpsit as for the quantum meruit, at his election. The plaintiff does not repudiate the contract nor seek to avoid it in indebitatus assumpsit as for the quantum meruit, but offers the contract in evidence and his proof of compliance with it to sustain his case. The agreed price, if there is an agreed price, becomes prima facie evidence

of the reasonable value of the service. But plaintiff may not recover more than the agreed price. Stollings v. Sappington, 8 Mo. 118;'".

In connection with the foregoing rule, it is appropriate to note that under Missouri law a building is "substantially complete" so as to entitle the contractor to the full contract price (plus reasonable compensation for extras, less whatever sum is necessary to remedy defects and supply omissions), when it has reached the state in its construction so that it can be put to the use for which it was intended even though comparatively minor items remain to be furnished or performed in order to conform to the plans and specifications of the completed building. State ex rel. Stites v. Goodman, Mo.Sup., 351 S.W.2d 763; Bloomfield Reorganized School District No. R-14 v. Stites, Mo.Sup., 336 S.W.2d 95.

After the contract was signed, Mr. Julian promptly commenced the building operations agreed upon. He was "on the job" at defendants' construction site only part time daily—from two to eight hours—except for "several" days when he was there all day. In Mr. Julian's absence his head carpenter, Elvin Scarbrough, was apparently in charge of the project. The work proceeded without event or any suggestion from defendants until about the time "we started on the wood". Defendants' architect did not personally supervise the work as it progressed—a circumstance of which plaintiffs complain. However, defendants testified that they did not employ the architect to supervise construction generally but only to (1) draw the house plans, (2) be present when they signed the contract, and (3) inspect the construction of the house before they made final payment. Defendants performed their own personal inspection of the work—a privilege reserved to them by the written contract. This was done principally by Mrs. Kiefer and particularly in the later stages of construction such as the processes of finish, trim and decoration, and the installation of fixtures and appliances.

Although the house was completed in general conformity with the requirements of the contract, some changes of relatively minor nature were made in the structure at variance with the architect's plans and the "F.H.A." specification. In some instances the builder used materials of lesser quality and cost than specified—illustratively, No. 3 or "utility" grade framing lumber instead of No. 2 grade required by "F.H. A." standards. The house as finally constructed contains a number of "extra" items and details not included in the plans. Some of the "extras" were done at the suggestion of the builder, a few on request of Mr. Kiefer, and the remainder were requested by Mrs. Kiefer. Still other extra items were required by physical necessity—for instance, the construction of a retaining wall, uncalled for by the plans, but necessitated by "a serious elevation problem". There are also minor variations from the plans in the nature of omissions—items of specified construction or finish not performed by the builder—and, admittedly there are defects in the structure, both of which entitle defendants to deductions from the total cost of construction as provided by the contract.

Nonetheless, it is established by all the evidence that plaintiffs finally constructed the dwelling substantially as called for by the plans and the contract, and delivered its possession to defendants, who took occupancy of the house in September of 1961. It is admitted by Mr. Julian that plaintiffs "fully completed all the work you (plaintiffs) had to do in order to build this house". Thereafter the parties met to negotiate a final settlement. Relying upon the contract, defendants took the position that they were obligated to pay no more than the remainder of the contract price, plus the reasonable value of extras and changes, less a sum representing the cost of items omitted and damages resulting from defects in the structure. Plaintiffs insisted that the contract was no longer in effect and insisted that defendants pay them the full amount expended for mate-

rials and labor plus a 10% contractor's fee. The parties thus reached impasse and settlement negotiation failed.

Seeking to avoid the binding effect of the building contract, plaintiffs charge that they were misled by defendants' conduct into an honest belief that defendants intended and consented to an abandonment of the contract. This "misconception", say plaintiffs, prejudiced them in that they expended monies in excess of the contract price just for materials and labor in building the house. We are reminded by plaintiffs that the question of intention is rarely capable of positive proof but is to be arrived at by logical deductions from proven acts. Parker v. School District, Mo.App., 325 S.W.2d 59. Additionally pertinent to the instant question is the rule that "where acts and conduct are relied on to constitute an abandonment, they 'must be positive, unequivocal and inconsistent with an intent to be further bound by the contract.'" Schwartz v. Shelby Construction Co., Mo.Sup., 338 S.W.2d 781.

Plaintiffs argue that they were misled into believing defendants had abandoned the contract because, in contravention of its terms, they made changes in the plans which were not in writing and without approval of the architect; because the architect did not regularly supervise the work; and, because the monthly payments of labor and material bills were not certified by the architect. We find no persuasive significance in the foregoing. The contract specifically provides that "the owner may order changes in the work, the contract sum being adjusted accordingly". Such right is vested in the owner without any requirement that the architect approve changes that are ordered by the owner. And, although the contract further provides that "such orders and adjustments shall be in writing", we believe that the course of action practiced by the parties indicates a mutual waiver of that requirement. It is the established rule that the

habitual acceptance of extra work done on oral orders in connection with a contract, and payment therefor, amount to a waiver of a contract clause providing that no claims for extra work or materials shall be allowed unless same be done or finished in pursuance of an order in writing. Hannan-Hickey Bros. Const. Co. v. Chicago B. & Q. Rr. Co., Mo.App., 247 S.W. 436.

It is of no consequence beneficial to plaintiffs' claim of abandonment that the architect did not regularly supervise the work. "A provision in a building contract that the contract shall be prosecuted under the full supervision of a duly qualified architect does not comprehend supervision of the methods and means of doing the work and is complied with by the employment of an architect with full supervision over the result to be accomplished by the contractor". 17A C.J.S. Contracts § 494(2), p. 711.

Nor is plaintiffs' theory of abandonment supported by the circumstance that defendants paid labor and material bills monthly, as plaintiffs requested them to do, without the architect's approval and certification. If defendants chose to forego the protection afforded them by the contract provision in question, we think plaintiffs have no cause to believe other than that defendants had waived the contract provision.

Still other circumstances are pointed to by plaintiffs as indicia that the parties abandoned the contract, to-wit, that defendants made an advance payment of $1,000.00 to plaintiffs at the signing of the contract which was not in accordance therewith, and that plaintiffs, with defendants' knowledge and consent, used a lower grade of lumber than called for by the contract. Of these matters we again say that both instances amounted to waivers by defendants of specific rights afforded them by the contract, that the benefit of such waivers inured to plaintiffs, and that plaintiffs will not now be heard

to assert these circumstances as proof of defendants' intentions to surrender the entire contract. These deviations from the written agreement, as well as others heretofore mentioned, are no more than minor modifications of the contract—initiated by plaintiffs and assented to by defendants.

■ We find no substantial credible evidence to support plaintiffs' pleaded allegation and present insistence that defendants took general charge and direction of the project, and thereby prevented plaintiffs from completing it under the terms of the contract and within the price bid. Admittedly Mrs. Kiefer was on the job much of the time when the interior of the house was being finished. That privilege was reserved to her by the contract. Several times in the course of her inspection she noted the absence of certain items and details called for by the plans and required of the builder that they be included in the construction of the house. On other occasions, as above noted, she requested minor changes and additions as extras on the basis of additional cost. She exercised the privilege of selecting the type, color, pattern and design of wall and floor coverings. She made her choice of wall paper, linoleum, paints, varnishes and stains, and in some instances, utility appliances and equipment, trim and finish. She generally supervised the processes of wood staining, painting and papering. There is no evidence of substance that these activities on the part of Mrs. Kiefer, in the interest of her future contentment as mistress of the house, interfered with plaintiffs' work under the contract or increased the cost thereof, except as to extras required.

The evidence in this case does not disclose acts and conduct of the parties, positive and unequivocal in nature, sufficient to clearly express a mutual intention to abandon the contract. We therefore conclude that the trial court erred in so finding and rendering judgment in plaintiffs' favor without limiting their recovery to the terms of the contract, and that additional error was committed by the court in rendering judgment against defendants on their counterclaim and dismissing that pleading. In arriving at these conclusions we have given due consideration to all decisions and text authority cited and relied upon by plaintiffs.

■ This controversy was tried without a jury, and we have reviewed the case "upon both the law and the evidence as in suits of an equitable nature", Civil Rule 73.01(d), V.A.M.R. In the state of the present record it is not possible to enter or direct the entry of a judgment for the sums precisely due to the respective parties. Consequently we deem it necessary to remand the cause for retrial. As indicated above, plaintiffs are entitled to recover the unpaid amount of the contract sum of $27,200.00. Additionally they are entitled to recover a sum representing the fair and reasonable value of extra work and materials furnished at defendants' request or with their acquiescence. Defendants are entitled to an award or credit of such sum as will fairly and reasonably compensate them for defects in the building due to defective materials or unskillful labor and for items omitted by plaintiffs in the performance of the contract. Since these figures and computations do not plainly appear in the present record, it will be incumbent upon the trial court, in re-trying the cause, to hear additional evidence and determine the fact issues we have above defined and to enter judgment in accordance therewith.

The judgment is reversed and the cause is remanded for a new trial in conformity with this opinion.

All concur.