**ARK CONSTRUCTION COMPANY, INC., a corporation, Plaintiff-Respondent,**

v.

**CITY OF FLORISSANT, a Municipal Corporation, Defendant-Appellant.**

No. 37749.

Missouri Court of Appeals, St. Louis District, Division Two.

Sept. 6, 1977.

Motion for Rehearing and/or Transfer Denied Nov. 14, 1977.

V. John Muehlenkamp, St. Louis, for defendant-appellant.

Lawrence O. Willbrand, St. Louis, for plaintiff-respondent.

REINHARD, Judge.

Defendant City of Florissant appeals from a judgment in favor of plaintiff Ark Construction Company from a suit on a construction contract between the two parties. Plaintiff was awarded damages in the amount of Twelve Thousand Two Hundred Eighty Two and 89/100 Dollars ($12,282.89).

On the 14th day of August, 1973, plaintiff Ark Construction Company entered into a contract with the City of Florissant whereby plaintiff contractor was to construct sidewalks, curbs and do related work in Florval Drive, St. Celeste Drive and Marquette Drive in the City of Florissant, St. Louis County, Missouri, according to the plans and specifications set out in the contract. The total bid on the project for the various work as submitted by Ark and accepted by the City was Eleven Thousand Six Hundred Ninety-Two Dollars ($11,692.00). Pursuant to change orders authorized under the contract for additional rock and additional asphalt, the contract price was increased to Twelve Thousand Two Hundred Eighty Two and 89/100 Dollars ($12,282.89).

The contract provided that the work under the contract was to be completed within ninety (90) calendar days from and includ-

ing the date of commencement. The contract expressly stated that time was of the essence and that the time of completion was an essential condition of the agreement. Other provisions of the contract will be specifically discussed as they are relevant.

There is some uncertainty as to the date of commencement of work by Ark; however it appears from the evidence that the completion date was November 27, 1973. Plaintiff failed to complete the contract work prior to this date. As to its failure in completing the work within the first 90 days, plaintiff offered testimony that the city engineer, Doug Hopkins, after work on the project had begun, ordered various changes raising by four inches the grade of the sidewalks, altering the radii of the driveways to be laid, and various other changes. Plaintiff's witnesses also testified that these various changes ordered by Hopkins took time and caused delay in the performance of the work. Paragraph 15 of General Conditions in the contract provided that:

> "In giving instructions, the Engineer shall have authority to make minor changes in the work, not involving extra cost, and not inconsistent with the purposes of the work, but otherwise, except in an emergency endangering life or property, no extra work or change shall be made unless in pursuance of a written order by the Engineer, and no claim for an addition to the Contract Sum shall be valid unless so ordered."

Other than the written orders for more crushed rock and more asphalt no written change orders were issued.

The contract also provided that extensions of time for completion of the work could be granted pursuant to a written request for extension due to delays for various causes beyond the contractor's control. Pursuant to this provision, on November 20, 1973, Ark requested a 10-day extension until December 7, 1973. This extension was granted by the defendant. As of December 7, 1973, plaintiff had not completed the work under the contract. Willie Smith, the President of Ark, testified that the failure

to complete the work during this extension period was due to bad weather and delay in materials.

Sometime during the period in which the contract was still in force, the plaintiff subcontracted with Glenn Construction Co. to do some of the work on the sidewalks. It is unclear from the record whether Glenn performed its work prior to or after the December 7 completion date.

On December 19, 1973, the defendant sent plaintiff a letter stating that plaintiff was well past the time for completion provided in the contract and that the work was incomplete and unsatisfactory. The letter stated that, pursuant to the provisions of the contract, the City planned to terminate the contract and that the letter was to serve as notice to Ark that upon completion of the seven-day notice period, the City intended to hire another contractor to finish the project. Paragraph 22 of the General Conditions of the contract provided that the owner was to have the right to terminate the contract "[i]f the Contractor should * * * cease operations under this Contract at any time for the space of ten (10) days, or otherwise be guilty of a substantial violation of any provision of the Contract, * * *." The provision further gave the owner the right, upon seven (7) days written notice, to take possession of the premises and finish the work by whatever method it might deem expedient. The paragraph also provided that upon such termination "the Contractor shall not be entitled to receive any further payment until the work is finished" and that "[i]f the unpaid balance of the Contract Sum shall exceed the expense of finishing the work, * * * such excess shall be paid to the Contractor."

After the December 19th letter from the City to Ark, the next correspondence between these unusually non-communicative parties was in the form of a letter dated February 5, 1974, from the City to Ark terminating the contract pursuant to the provisions outlined in Paragraph 22 of the General Conditions. The defendant's delay in terminating the contract after the December 19 letter is unexplained.

On February 27, 1974, defendant contracted with Baumann Construction Company, Inc. for completion of the work on the project. Under the contract, Baumann was to remove 175 feet of sidewalk as laid by plaintiff and lower it to conform to the original plans. They were also to remove and repave 12 concrete drive approaches with four foot radii, lay some asphalt for proper drainage, place rock in the drives as needed, adjust a manhole, and perform various other landscaping and finishing activities. The price of the contract between Baumann and the defendant was Eight Thousand Six Hundred Fifty and 80/100 Dollars ($8,650.80). Full payment on this contract was made to Baumann.

On February 11, 1974, plaintiff instituted suit on the contract alleging performance of the contract and breach by defendant for failure to pay any sums under the contract. It further alleged that any delay in the performance of the work was due to the conduct of defendant. Plaintiff's second count was in quantum meruit. Defendant denied full performance by plaintiff and sought as a set-off any sums reasonably expended by the City to complete the contract work according to the plans and specifications. Defendant also brought a counterclaim for liquidated damages pursuant to provisions in the contract. The trial judge dismissed plaintiff's Count II on quantum meruit at the close of all the evidence. A jury rendered a verdict for the full amount of the contract price for plaintiff, and found against defendant on both its set-off and counterclaim.

■ The defendant asserts that the trial court erred in failing to direct a verdict for defendant on plaintiff's claim for recovery under the contract because plaintiff failed to show that it had complied with all the provisions of the contract. In reviewing the denial of a motion for a directed verdict at the close of plaintiff's case and at the close of all the evidence, the appellate court is to view the evidence in the light most favorable to plaintiff, giving plaintiff all reasonable inferences therefrom and so viewing the evidence to determine whether a submissible case was made. *Woodford v. Illinois Central Gulf Railroad Co.*, 518 S.W.2d 712, 715 (Mo.App.1974). "The granting of a directed verdict at the close of plaintiffs' evidence is a drastic action which should be taken only when all the evidence and reasonable inferences therefrom are so strongly against the plaintiff that reasonable men could not differ. When the party having the burden of proof has adduced substantive evidence on a pleaded issue, that issue should be submitted to the jury * * * ." *Kaelin v. Nuelle*, 537 S.W.2d 226, 229 (Mo.App.1976). Guided by these considerations, we find that a submissible case for recovery on the contract was made.

■ Defendant contends that since plaintiff did not prove full performance under the contract, plaintiff could not recover on the contract. The general rule is that the plaintiff must prove full performance under the contract in order to recover. *Gammon v. Armantrout*, 439 S.W.2d 771, 773 (Mo. App.1969). However, defendant overlooks two exceptions to that general rule which are present in this case: 1) when full performance is prevented by acts or conduct of the defendant; 2) when the provisions of the contract itself permit recovery on the contract for less than full performance.

■ The evidence is conclusive that plaintiff never finished the work under the contract. Therefore, in order to make a submissible case for recovery on the contract (other than under a contractual provision that so provides), the plaintiff was bound to present evidence of a sufficient excuse for non-performance. *Collins v. Roth*, 224 S.W.2d 129, 131 (Mo.App.1949); *Dugan v. Trout*, 271 S.W.2d 593, 597 (Mo. App.1954). We find that plaintiff met its burden of producing such evidence.

The deadline under the contract, after the extension granted pursuant to the contract, was December 7, 1973. Furthermore, Article 2 of the contract agreement provided that time was to be of the essence in the contract and that the rate of progress and time of completion were essential conditions of the agreement. The uncontradicted evi-

dence shows that plaintiff had not completed the contract work by December 7. Initially, to present a submissible case for recovery on the contract, plaintiff had to produce substantial evidence justifying his failure to comply with this condition.

As to this failure to complete the work by December 7, plaintiff's evidence is sufficient. Four of plaintiff's witnesses testified that the city engineer ordered various changes in the forms laid for the sidewalk and in the grade for the sidewalk and driveway. Two of these witnesses stated during the trial that these changes ordered by the city engineer caused a delay in the performance of the contract work. In his testimony, Smith, Ark's president, stated that certain delays in the contract work were caused by the city engineer's conduct in ordering changes. Smith also stated that inclement weather and delay in materials had prevented completion of the work during the ten-day extension granted to Ark.[1] When the owner prevents or hinders the performance by a contractor within the time specified in the contract, the delay is excused. *Artcraft Cabinet, Inc. v. Watajo, Inc.*, 540 S.W.2d 918, 925 (Mo.App.1976). From the evidence, a jury could reasonably have found that plaintiff was excused from completion of the contract work within the time specified in the contract.

As to the failure to complete the work between December 7, 1973 and February 5, 1974, the defendant's delay-causing conduct did not operate to give the plaintiff an unlimited extension of time after December 7 but rather entitled plaintiff only to reasonable additional time within which to complete the work. *Wentzel v. Lake Lotawana Development Co.*, 226 Mo.App. 960, 48 S.W.2d 185 (1932). What constituted a reasonable time for the completion of contract work was a question of fact for the jury. *Detmer v. Miller*, 220 S.W.2d 739, 744 (Mo.App.1949); *Carroll v. Wiggains*, 199 S.W. 280, 281 (Mo.App.1917).

The plaintiff presented testimony that inclement weather was a significant factor in plaintiff's failure to complete the work prior to termination. From the testimony of Smith, we believe that a jury could have found plaintiff had not been given a reasonable time in which to complete the work.

Furthermore, plaintiff contends that, as with the inclement weather during the ten-day extension period, it would not have had to confront the inclement weather had it not been for the delays caused by the defendant. A jury could then have reasonably found that plaintiff was again excused for this delay in performing the work, *Artcraft Cabinet, Inc. v. Watajo, Inc., Supra* at 925; *Wentzel v. Lake Lotawana Development Co., supra*, and that defendant's termination wrongfully prevented the plaintiff from completing the contract. When a contractor is wrongfully prevented by the owner from completing the work under a contract, he may sue on the contract. *Curators of the University of Missouri ex rel. Shell-Con, Inc. v. Nebraska Prestressed Concrete Company*, 526 S.W.2d 903, 911 (Mo.App. 1975); *Isaac v. Koenig*, 447 S.W.2d 818 (Mo.App.1969); *Rodgers v. Levy*, 199 S.W.2d 79, 81 (Mo.App.1947). Again, a submissible case was made for recovery on the contract.[2]

1. To be sure, the contract did provide sufficient time for unusual weather conditions and delays in obtaining materials. Therefore, the weather itself would not represent a valid excuse for failure to complete the contract work. Plaintiff's contention, however, is not simply that the weather delayed the work but rather that defendant caused a delay which forced the plaintiff into a period of bad weather which further delayed performance.

2. This resolution is consistent with the intent of the parties as expressed in the terms of the contract. The contract provides in Paragraph 22 of the General Conditions that under certain situations the defendant owner may terminate the contract and employ others to complete the contract work. The provision goes on to state that, once the work is completed by the owner, the contractor shall be paid the amount by which the unpaid balance of the contract sum exceeds the expense of finishing the work. Therefore, under this provision, the plaintiff would be entitled to recovery on the contract pursuant to a rightful termination of the owner. The measure of damages in such a case, however, would be different from the measure of damages due plaintiff after a wrongful termination of the contract.

Defendant objects to plaintiff's Instruction No. 7 which, as submitted to the jury, reads:

"If you find in favor of Plaintiff on Plaintiff's claim for damages, then you must award Plaintiff such sums as agreed upon under Plaintiff's contract."

Defendant asserts that such an instruction fails to allow the jury to return a verdict for a lesser amount than the contract price under circumstances where plaintiff has not fully performed.

The plaintiff offered no evidence that it had fully completed the contract. Smith testified that the contract was only ninety percent (90%) complete when defendant prevented plaintiff from completing the contract. The case was submitted to the jury on the theory that full performance was wrongfully prevented by acts or conduct of the defendant.

 Where an owner breaches a construction contract by preventing the contractor from doing the work, the contractor's measure of damages is the contract price, less the amount it would have cost him to complete the performance of the contract. *Sides v. Contemporary Homes,* 311 S.W.2d 117 (Mo.App.1958); *Crescent Mfg. Co. v. N. O. Nelson Mfg. Co.,* 100 Mo. 325, 13 S.W. 503, 505 (1890); *Pallardy v. Link's Landing, Inc.,* 536 S.W.2d 512, 516 (Mo.App.1976). Instruction No. 7 would require the jury to render the full contract price under the evidence in this case. This misstates the law and the case must be reversed and remanded on the issue of damages.

 In remanding the case to the trial court for a new trial, we are compelled also to consider the defendant's claim that the trial court erred in failing to direct a verdict for defendant on its counterclaim for liquidated damages. The contract specifically provides that upon failure to complete the work within the stipulated time, the contractor will pay the owner fifty dollars ($50.00) for each day elapsing between the expiration of such time limit and the date of full completion. The validity of such a provision for liquidated damages was established in *Bloomfield Reorganized School District No. R–14 v. Stites,* 336 S.W.2d 95, 98 (Mo.1960). Although plaintiff failed to complete the work by December 7, plaintiff is not to be held liable for any damages for any delay caused by the conduct of the defendant's representative in changing the plans. When an owner hinders the performance of a building contract within a specified time, the delay is ordinarily excused and the contractor cannot be held liable for liquidated damages. *Southwest Engineering Co. v. Reorganized School Dist. R–9,* 434 S.W.2d 743, 750 (Mo.App. 1968). As outlined above, the plaintiff presented sufficient evidence by which a jury could find that defendant's conduct had prevented plaintiff from completing the work within the time specified in the contract. Therefore, the court did not err in failing to direct a verdict on defendant's counterclaim for liquidated damages and on retrial this matter shall not be considered.

 Defendant asserts that the verdict was contrary to the evidence in that plaintiff did not prove that the changes which it made in the radii of the driveways were minor, needing no written change order. Defendant alleges that such changes were major ones and that the making of such changes without the requisite written change orders constituted a breach by plaintiff. The question of whether the change in the radii of the driveways was major was properly a question of fact for the jury. Plaintiff's witnesses testified that the changes were minor. Defendant's witnesses testified that the changes were major. For the purposes of this action, it was properly within the province of the

Even under this theory, applying Paragraph 22 to the case, we believe that plaintiff had presented a submissible case for recovery on the contract. However, the case was not submitted to the jury on a theory of recovery under Paragraph 22 but rather on a theory of recovery after a *wrongful* termination. Plaintiff neither conceded the propriety of the termination nor cited Paragraph 22 as a basis for recovery. Therefore, the measure of the damages shall be controlled by the law governing recovery after a wrongful termination.

jury to resolve that conflict. *Mutual Benefit Health & Accident Assoc. v. Hobbs*, 186 F.2d 321, 323 (8th Cir. 1951); *Liberty Storage Co. v. Kansas City Terminal Warehouse Co.*, 340 S.W.2d 189, 191 (Mo.App.1960).

Reversed and remanded for new trial on the issue of damages.

McMILLIAN, P. J., and STEWART, J., concur.