WINN–SENTER CONSTRUCTION
COMPANY, Plaintiff–
Respondent,

v.

KATIE FRANKS, INC., and Mario
Scaglia, Defendants–
Appellants.

Nos. WD 44219, WD 44223.

Missouri Court of Appeals,
Western District.

Oct. 15, 1991.

Richard T. Brewster, Jr., Kansas City, for defendants-appellants.

Charles W. Fairchild and Dan C. Sanders, Kansas City, for plaintiff-respondent.

Before SHANGLER, P.J., and BERREY and HANNA, JJ.

BERREY, Judge.

This cause of action was brought by Winn–Senter Construction Company against Katie Franks, Inc., and Mario Scaglia individually. Winn–Senter brought the suit under a breach of contract theory with an additional claim alleging damages under quantum meruit.

The case was tried to the court and Winn–Senter was awarded judgment against both defendants under the breach of contract theory in the amount of $16,650. With regard to the count under quantum meruit, the trial court found against defendant Katie Franks, Inc., only, in the amount of $5,438. Defendants appeal.

The parties entered into this contract on or about April 24, 1987. Katie Franks, Inc., was the owner of the now defunct Katie Franks restaurant. Defendant Mario Scaglia is the president and sole shareholder of Katie Franks, Inc.

The contract was executed using Standard Form of Agreement A.I.A. document AIII. Mario Scaglia signed as president of the corporation and his wife Kathryn Scaglia signed as secretary. Scaglia also signed the contract a second time as guarantor of the contract. Notwithstanding his signature and admission he signed the contract as guarantor, during trial he denied the existence of a guarantee agreement with Winn–Senter and claimed he had no knowledge of any terms of such an agreement.

The base amount of the contract was $278,700. In addition, Winn–Senter contends Scaglia and Scaglia's architect ordered work changes during the course of the construction totaling $5,438. It is undisputed that as to date Katie Franks has paid Winn–Senter $262,000 for work performed on the contract.

Appellants first argue the trial court erred by refusing to grant their joint motion for directed verdict. They contend there was not substantial evidence to support respondent's claim they were timely in completing the work required under the contract. Additionally, appellants complain respondent failed to correct or complete the items on the punch list which was attached to the certificate of substantial completion.

In reviewing the denial of a motion for directed verdict at the close of plaintiff's case and at the close of all evidence, the appellate court is to view the evidence in the light most favorable to the plaintiff, giving plaintiff all reasonable inferences therefrom and so viewing the evidence to determine whether a submissible case was made. *Ark Const. Co. v. City of Florissant,* 558 S.W.2d 418, 421 (Mo.App.1977) (citing, *Woodford v. Central Gulf Railroad Co.,* 518 S.W.2d 712, 715 (Mo.App. 1974)).

Appellants point to three specific instances to support their claim that Winn–Senter failed to perform their duties under the contract. First they contend Winn–Senter failed to remove stains from the granite tile. Secondly, they contend the respondent failed to repair scratches in the bar top. Finally, they contend the respondent failed to properly provide a polyurethane coating to the wooden steps leading to the upper dining area.

Appellants failed to produce any evidence, beyond the testimony of Mario and his brother, Joseph Scaglia, which would support the claim that Winn–Senter failed to complete the work contracted for. Appellants provided no photographs of the unsightly tile or bar top. Additionally, the trial testimony of Scaglia suggests he approved of the stairs upon completion date and only began to complain after a great deal of customer traffic caused the steps to show wear and tear. Scaglia also testified he took no action to maintain the life of the steps through maintenance.

■ Under Missouri law, strict compliance with terms of the contract is not required and substantial compliance must be accepted. *Gundaker v. Templer*, 560 S.W.2d 306, 309 (Mo.App.1977).

With regard to the show grill area, Scaglia complained the tiles were unsightly. However, Winn–Senter presented evidence that Scaglia and his architect chose the tiles to be used. They also made the decision to use the black grouting. It was after the tile and grouting had been completed that Scaglia insisted the grouting be removed and completed in a lighter color. Winn–Senter testified they removed the black grouting and cleaned the tiles with acid to remove the black stains and replaced the tiles with the grey grouting. Winn–Senter also provided evidence which indicated efforts were made to correct the scratches on the bar top by applying a second polyurethane coating.

■ With respect to all of the complaints made by the appellants, the evidence was clear the alleged defects did not prevent the restaurant from remaining open, and no attempt was ever made to correct or replace the areas where the alleged problems existed.

The appellants also maintain judgment was improperly entered because the work was not completed in a timely manner. Appellants support for this assertion arises out of Article 4.1 of the contract which provides that "substantial completion shall be obtained within one hundred days from plaintiff's receipt of notice to commence work under the contract." However, it is impossible to judge whether it was completed in the requisite one hundred days because no written notice to proceed was ever issued to Winn–Senter. Additionally, the record is replete with evidence that the delays which occurred were primarily attributable to the appellants and their architect.

■ Missouri law is clear in holding where the owner prevents or hinders performance by the contractor, within the time specified in the contract, any delay by the contractor is excused. *Ark Const. Co. v. City of Florissant*, 558 S.W.2d at 422.

■ Evidence shows the job was substantially completed within 118–130 days from the time work commenced. A variety of extra projects contributed to the delay. Initially, upon constructing the bar area, it was discovered the architectural plans failed to provide for the necessary plumbing behind the bar. Therefore, it was Winn–Senter's responsibility to make plans for, and install, the plumbing. Additionally, changes in the bar configuration were requested. Also, Winn–Senter added extra items around the bar and the waitress station. Finally, they spent extra time removing the black grouting, cleaning the tile and regrouting. Without question, there was substantial evidence to support the contention that the delay was due to appellants' supplemental orders and not caused by Winn–Senter's inattentiveness. Winn–Senter substantially completed its obligations under the contract. The trial court did not err in refusing to grant appellants' joint motions for directed verdict.

■ The appellants next argue the trial court erred in admitting evidence of additional work changes and work orders. The contract stated "the owner would not be responsible for any changes in excess of the stated cost of work unless it was duly executed by Katie Franks, Inc." Because there were no written change orders Katie Franks maintains the trial court erred in awarding damages under the theory of quantum meruit.

The general rule is when a construction contract requires a written change order, there is no right to recover for extra work without such a writing or waiver by the owner. *Herbert M. Brooner Const. Co. v. Golden*, 499 S.W.2d 541, 547 (Mo.App. 1973). A waiver of a written change order may be shown by presenting evidence the parties have orally agreed upon the "extras" and the "extras" have been supplied pursuant to this agreement. *Meadows v. Kinser*, 603 S.W.2d 624, 626 (Mo.App.1980).

There is overwhelming evidence to support respondent's position it was instructed

to do additional work by both the appellants and their architect.

Section 2.22 of the contract provides:

The architect will be the owner's representative during construction and until final payment is due. The architect will advise and consult with the owner. The owner's instructions to the contractor shall be forwarded through the architect.

Appellant Mario Scaglia testified he requested extra and additional work totaling $1,560, although no written change orders were ever executed.

■ Habitual acceptance of extra work done on oral change orders in connection with a contract and payment therefore results in a waiver of any contract clause providing that no claims for extra work or material shall be allowed unless the same be pursuant to a written change order. *H.B. Deal Const. v. Labor Discount Center, Inc.*, 418 S.W.2d 940, 950 (Mo. banc 1967); *Julian v. Kiefer*, 382 S.W.2d 723, 729 (Mo.App.1964). It is evident changes were requested by appellant Scaglia and the architect without written change orders. Scaglia waived his right to demand written orders be utilized and there was no error by the trial court in admitting evidence of the additional work changes.

■ The appellants next argue the trial court erred in entering judgment against Mario Scaglia under Count I, breach of guaranty contract. They contend there was no substantial evidence of a binding contract between Winn–Senter and Mario Scaglia because there was no evidence Winn–Senter bargained for any guarantee of the contract between Winn–Senter and Katie Franks.

Upon review of the record, this court finds substantial evidence to support Mario Scaglia's status as personal guarantor and affirm the trial court's decision as to this issue.

Mario Scaglia signed the contract twice, once as the personal representative of Katie Franks, Inc., and again as guarantor. Additionally, certain answers by Scaglia to plaintiff's request for admissions were read into evidence at trial. The question asked defendant Scaglia to admit:

Concerning the agreement attached as exhibit A hereto [the contract], Mario Scaglia executed said agreement as a personal guarantor.

Scaglia's answer to the request for admissions was as follows:

Yes, as to that part of the agreement attached as exhibit A, Mario Scaglia signed as guarantor.

The question of whether a certain document creates an obligation of guaranty is to be determined in relation to not only the language of the document itself, but the setting and circumstances attending the writing thereof. *Rich v. Clayton Mark & Co.*, 250 F.2d 622, 627 (8th Cir.1957).

Scaglia testified he had his lawyer review the contract prior to the time he executed it in his corporate and individual capacities. Additionally the evidence showed Scaglia guaranteed the loan from Country Club Bank to finance the Katie Franks restaurant construction project. It is clear Scaglia was aware of the ramifications and obligations associated with signing as a guarantor of a contract. There is no evidence to suggest he inadvertently signed the contract. Additionally, there is no evidence to suggest he signed the contract a second time for any other purpose than to guarantee that Winn–Senter would be paid for the work it performed.

■ Finally, appellants contend if there was a guarantee agreement, it is void because material alterations were made in the contract. Appellants contend the material alterations to the contract were made when the base contract amount was increased by $5,438 through change orders, and the completion of the project was slightly delayed. The trial court determined that $5,438 worth of change orders, out of a total $278,700 were neither material alterations or departures from the contract. Additionally, the trial court found the delay in completing the project was directly attributable to the appellants. There was no evidence presented by Scaglia to establish a material

change in the contract. The trial court is affirmed on all counts.

All concur.