Celeste J. DAUGHERTY, Plaintiff–Respondent,

v.

BRUCE REALTY & DEVELOPMENT, INC., Respondent–Appellant.

No. 65232.

Missouri Court of Appeals, Eastern District, Division Four.

Jan. 24, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 22, 1995.

1. Apparently, the form was based on an earlier version of § 577.041.

James E. Godfrey, Jr., Godfrey & Fenlon, St. Louis, for appellant.

Stephen C. Murphy, Devereux, Murphy, Striler & Brickey, L.L.C., St. Louis, for respondent.

KAROHL, Judge.

Bruce Realty and Development, Inc., (Bruce) developer and seller of condominiums, appeals judgment in favor of Celeste Daugherty, purchaser, on suit for breach of real estate sale contract and against it on its counterclaim for Daugherty's failure to close. Bruce presents three points on appeal, all of which challenge the sufficiency of the evidence. We affirm the determination on the liability issues. We reverse and remand for entry of judgment on Daugherty's damages.

Viewed in the light most favorable to the verdict, the proven facts are as follows. On January 21, 1988, Daugherty and Bruce entered into a written contract for the sale of a condominium unit to be constructed by Bruce in Starboard Side Condominiums. The purchase price was $130,000. When the contract was executed, Daugherty paid an earnest money deposit of $6000, leaving a balance due of $124,000 on closing. Closing was originally set for May 2, 1988. After several extensions, the parties agreed to a closing

date of September 30, 1988. The contract provided the following express warranty:

> The Unit and the Common Elements in the Condominium are suitable for the ordinary uses of real estate of its type and any improvements made or contracted for by the Seller, or made by any person before the creation of the Condominiums, shall be:
>
> Free from defective materials; and
>
> Constructed in accordance with applicable law, according to sound engineering and construction standards, and in a workmanlike manner.

The contract did not provide for an escrow of any sums for incomplete items. It stated, "Property to be accepted in its condition at the sale closing date unless otherwise stated in the Sale Contract, or written amendment thereto."

Daugherty was not interested in some of the options that Bruce offered. She was allowed to arrange for her own options. The parties agreed Daugherty would contract with suppliers of her choice to obtain specialty items for inclusion in the condominium unit. Some of the items were carpets, lighting, fixtures, cabinets, a whole house vac, intercom and a burglar alarm. Craig Bruce, the principal officer of Bruce, was contacted by these suppliers regarding their supplying materials to the unit. He indicated he would not object to their providing them. Daugherty would sign the suppliers' invoices. Daugherty dealt directly with suppliers to comply with this condition. There was no evidence of any amendment to the sale contract regarding credits or price adjustment, except for a reference to an allowance for fixtures. There was no evidence the items increased the value of the unit.

On September 30, 1988, the date the parties were to close, Daugherty and Jay Lewis, a professional inspector hired by her, examined the premises. She testified she observed over thirty unfinished items. She also introduced photographs of the condition of the property on this date. In addition, Lewis testified that on the date of closing, there was only "work in progress," and he addressed the condition of the roof specifically:

> [T]he usage of ... shingle in this area is a mistake. At the very least, 90 weight rolled roofing ... should have been used. But this would be considered ... the least expensive and, quote, quick fix response, to the problem.
>
> I feel ... galvanized standing seam steel pan should have been used. What is very important in this area is the fact that the roof line valley runs underneath the eaves and has no real way for allowing for drainage. Drainage in this area is crucial....
>
> The skylights on the west side of the roof have dissimilar nails on the aluminum flashing. Rust and corrosion is already occurring. And then, [p]lastic roofing cement has been used on the top side of the skylights.... The usage of plastic roofing cement on new skylight installations ... would be considered a non-professional approach.

> \*   \*   \*   \*   \*   \*

> I am quite certain I made it clear to her that there were a number of things at the site—at the condominium that were not completed, and that there were certainly reasons for concern in regards to the roof specifically, and that I would suggest possibly not closing or holding money in escrow until the property was closed.

In addition to the problems with the roof, Lewis testified there were numerous other defective or incomplete items: a "loop vent" under the kitchen sink, which Lewis described as a hardship type of vent; incomplete painting, joint compound, "cedar trim/mortar work," and landscaping; doors rubbing on the carpet; front door jamb not plumb; leaking bathroom faucet; roof flashings not properly applied; and a water problem in the basement. Lewis was then asked whether the construction of the unit was in compliance with the standard set in the contract:

> Q. Would you say that the condominium that you inspected on September 30th, 1988, was free from defective materials?
>
> A. I would not say that.
>
> Q. All right. Would you say it was ... constructed according to sound engineer-

ing and construction standards in a workmanlike manner?

A. No. I would not say that.

Finally, the evidence was undisputed that not only was no St. Louis County occupancy permit issued as of September 30, 1988, the necessary inspections were not conducted until after that date.

Daugherty testified that up until September 30, she intended to close on the sale. However, after her inspection of the property on the scheduled date of closing, the recommendation of Lewis against closing, and her observation that the contract provided no protection for her in the event that she should close before completion, she chose not to close and to seek the return of her earnest money, together with the money she had paid directly to suppliers.

Daugherty sued Bruce for breach of contract. Bruce filed a counterclaim for breach of the same contract. The trial court entered judgment for Daugherty and against Bruce on its counterclaim. The court awarded Daugherty $10,401.52, consisting of $6000 she had deposited with Bruce and $4401.52, which she had paid directly to third-party suppliers. The court also awarded interest from the date of breach and $750 for attorney's fees as a result of setting aside an earlier default judgment that had been entered after Bruce's attorney temporarily "withdrew" from the case.

On appeal, Bruce argues three points of error. We address Points I and III together. In these points, Bruce argues the trial court erred in finding in favor of Daugherty for breach of contract and against its counterclaim in that such findings are contrary to the law and against the weight of the evidence. In support of these points, Bruce contends it performed all its obligations or, at a minimum, had substantially performed all obligations under the contract for the sale of the condominium unit. Furthermore, Bruce argues Daugherty failed to perform her obligations as called for by the contract, and as a result, Bruce was damaged.

We will affirm the judgment of the trial court, unless there is no substantial evidence to support it, it goes against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

Strict compliance with terms of a construction and sale contract is not required, and substantial compliance must be accepted. *Winn–Senter Construction Co. v. Katie Franks, Inc.*, 816 S.W.2d 943, 945 (Mo. App.1991). Under Missouri law, a building is substantially complete so as to entitle the contractor to the full contract price when it has reached the state of its construction so that it can be put to the use for which it was intended, even though comparatively minor items remain to be furnished or performed to conform to the plans and specifications of the completed building. *Julian v. Kiefer*, 382 S.W.2d 723, 728 (Mo.App.1964). The materiality of a breach is usually a question of fact. *McKnight v. Midwest Eye Institute of Kansas City, Inc.*, 799 S.W.2d 909, 915 (Mo.App. 1990).

We find the evidence supported the judgment for return of the earnest money and against Bruce on its counterclaim. Daugherty testified there were over thirty items in which the construction of the condominium unit was not complete and she repeatedly notified Bruce of her concern with these incomplete items. In addition, her expert, Jay Lewis, testified he found several significant deficiencies in the construction of the building. Specifically, he found portions of the construction to be non-professional and unworkmanlike. Furthermore, Craig Bruce testified that as of the scheduled closing date, St. Louis County had not inspected various parts of the building—for example, the plumbing. Nor had it issued an occupancy permit. Last, the evidence showed that Bruce's express warranty that construction would be free from defective materials and done in a workmanlike manner was violated. *See County Asphalt Paving Co., Inc. v. The 1861 Group, Ltd.*, 851 S.W.2d 577, 581 (Mo. App.E.D.1993). Daugherty's failure to appear at the closing does not prevent a finding that Daugherty did not breach the contract. A material defect or failure in performance is not a reasonably expected performance and may operate to excuse performance of the other party. *Health Related Services Inc. v.*

*Golden Plains Convalescent Center, Inc.,* 806 S.W.2d 102, 104 (Mo.App.1991). We find there was evidence to support a finding of fact that Bruce's failure to complete the construction of the condominium unit "free from defective materials" and "in a workmanlike manner" constituted an anticipatory breach on behalf of Bruce, which relieved Daugherty of her duty to appear and close. Furthermore, because it was Bruce, and not Daugherty, who breached the contract, it is not entitled to recover damages on its counterclaim. Points I and III denied.

In Point II, Bruce claims the trial court erred in the award of damages. This contention is in two parts: (1) the return of earnest money was contrary to the contractual provisions for forfeiture by Daugherty because of the breach, and (2) the remainder of the award of damages consisted of money that Daugherty paid to third parties for options that were incorporated into the construction, and thus not part of the contract with Bruce, and are not recoverable under the theory of breach of contract. It claims these awards of damages are an erroneous application of the law and against the weight of the evidence.

We address the issue of the earnest money first. For a seller of real estate to be entitled to retain money paid by a defaulting purchaser, seller cannot be in default and must be ready, able, and willing to perform. *Joplin CMI, Inc. v. Spike's Tool and Die, Inc.,* 719 S.W.2d 930, 935–936 (Mo.App.1986). Here, there was evidence to support the finding Bruce breached the contract by failing to complete construction as required. Thus, Bruce is not entitled to rely on the forfeiture provision.

The award to compensate Daugherty for sums she elected to pay third-party suppliers is a different matter because the only theory submitted for recovery was breach of the sale contract. The third parties and the amounts paid to them include the following: Jaffe Lighting, approximately $250; Patrick Ruby's, approximately $270 for shades; Teel Lighting, approximately $500; Jay Henges, approximately $400 for carpeting; and Unitron, approximately $2200 for a vac system, burglar alarm system, and intercom. None of these items were the subject of the sale contract on which Daugherty relies. There was no evidence Bruce ever agreed to pay for any of these items.

We find the award of damages in the amount purchaser elected to pay directly to third-party suppliers is an erroneous application of the law in this case. Bruce was not a party to any of the agreements that purchaser made with third-party suppliers. None of the purchases were made a part of the contract with Bruce. There was no proof the purchased materials increased the value of the condominium above the agreed sale price. Daugherty cannot recover damages on the theory of breach of contract for items that were never the subject of the agreement. Thus, the amount of damages must be reduced by the amount she paid directly to third-party suppliers, $4401.52, and interest thereon.

The dissent assumes the substitutions and additions were "improvements to the condominium" but there is no proof to support a finding Daugherty's choices increased the value of the condominium. The conclusory references to "upgrades" and "improvements" are not self-proven facts. In point of fact, Daugherty made no effort to prove the value of the condominium was increased. We cannot affirm on the basis a quantum meruit theory was tried by consent. Plaintiff filed a one count petition for breach of contract; she has judgment on that theory for a refund of her deposit; and, she has never claimed she was proceeding in quantum meruit. She did not do so in the trial court and has argued only her theory of breach of contract in this court. The theory of quantum meruit was not tried, by consent or otherwise. By plaintiff's position she plead only breach of contract and tried only that theory. It would not be fair to approve a recovery on an alternative theory where defendant proceeded to meet only the plaintiff's claim for breach of contract. Second, *First Place v. Douglas Toyota III,* 801 S.W.2d 721 (Mo.App.1990) cited by the dissent did not approve a recovery in a one count petition on two legal theories where one of the theories was never mentioned at trial or on appeal.

We affirm in part, reverse in part, and remand for entry of a judgment consistent with this opinion.

AHRENS, P.J., concurs in part, dissents in part in separate dissenting opinion.

SIMON, J., concurs.

AHRENS, Presiding Judge, concurring in part, dissenting in part.

I concur with the majority in affirming the award of damages to purchaser for return of the earnest money deposit and in affirming the judgment for purchaser on seller and developer's counterclaim. I respectfully dissent from the portion of the majority opinion which reverses the award of damages to purchaser for improvements to the condominium which seller and purchaser agreed would be made and for which purchaser made payments direct to third parties. I note the basis for the majority's reversal was not asserted in the trial court nor raised or briefed on appeal by the appellant.

The majority states the only theory upon which recovery was sought was one of breach of contract. I disagree.

Plaintiffs Second Amended Petition alleges the following:

5. During the course of said contract, the Plaintiff, with the agreement of the Defendant, *upgraded the improvements to said condominium* increasing the sale price to One Hundred Forty–Two Thousand Two Hundred Seventy–Three Dollars ($142,-173.00). Further the parties agreed that Plaintiff would contract directly with third-party suppliers and contractors for *certain improvements to the above-referenced condominium* to whom Plaintiff paid a total sum of Four Thousand Four Hundred One Dollars and Fifty–Two Cents ($4,401.52)....

12. *Despite the demands of Plaintiff, Defendant has failed* or refused *to* return to Plaintiff her earnest money deposit in the sum of Six Thousand Dollars ($6,000.00) and *reimburse to Plaintiff her costs and expenses incurred in making improvements to said condominium* totalling Four Thousand Four Hundred One Dollars and Fifty–Two Cents ($4,401.52).

13. Defendant's actions as above described constitute a substantial and material breach of the parties' agreement, and as a direct consequence thereof, Plaintiff has sustained damages in the sum of Ten Thousand Four Hundred One Dollars and Fifty–Two Cents ($10,401.52).... (emphasis added).

To recover for quantum meruit, the plaintiff must prove that it provided defendant materials or services at defendant's request or acquiescence, that the materials or services had certain value, and that defendant failed to pay the reasonable value of those materials or services upon request of the plaintiff. *First Place v. Douglas Toyota III,* 801 S.W.2d 721, 724 (Mo.App.1990).

Rule 55.33(b) states:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.

Upon a thorough review of the record, I believe the issue of restitution was properly tried. Plaintiff's petition, while less than artfully pleaded, adequately notified defendant that restitution damages were sought. Purchaser testified that after signing the contract, she and Mr. Bruce later agreed to the "upgrades" and "amenities" which purchaser paid for directly. The transcript indicates receipts for these items were admitted into evidence. Purchaser further testified that she did not receive back any portion of the money she spent for these items which went into seller's condominium. Purchaser asked the trial court for judgment for the amounts which she had expended for these "improvements." It is a reasonable inference that the trial court's award of $4,401.52 is the reasonable value of those improvements. I believe the record contains substantial evidence to support the trial court's award to purchaser for the amounts purchaser paid for improvements to seller's property.

I would affirm the judgment of the trial court in all respects.