# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3609

_____

| | | |
|---|---|---|
| Lepi Enterprises, Inc., an Ohio corporation, | * * * | |
| Appellee, | * * | |
| v. | * * | Appeal from the United States District Court for the Eastern |
| National Environmental Service Corp., an Indiana corporation, d/b/a NES Corporation; The Insurance Company of the State of Pennsylvania, | * * * * * * | District of Missouri. |
| Appellants. | * | |

_____

Submitted: October 13, 2005
Filed: March 8, 2006

_____

Before ARNOLD, MURPHY, and GRUENDER, Circuit Judges.

_____

ARNOLD, Circuit Judge.

National Environmental Service Corporation and the Insurance Company of Pennsylvania (ICP) appeal the district court's judgment and award of damages against them and in favor of Lepi Enterprises, Inc. The jury awarded Lepi $815,800 for damages stemming from National's breach of its contract with Lepi; that contract was covered by a payment bond that ICP had issued on National's behalf. The district court also awarded prejudgment interest on this sum from the date that the contract

was terminated. We affirm the judgment for damages in full, but affirm the award of prejudgment interest only with respect to $565,547 of the damages.

## I.

This suit arose from the demolition of the Darst-Webbe housing project in St. Louis, Missouri. The St. Louis Housing Authority contracted with National to demolish the buildings, but before this could be accomplished asbestos in the buildings had to be removed. National subcontracted with Lepi to remove the asbestos. The Housing Authority hired a third-party consultant, REACT Environmental Engineers, to identify the areas where asbestos was present and to inspect the buildings before demolition to ensure that all the asbestos had been removed.

Lepi removed the asbestos in three buildings, and REACT approved its work. An inspector from the Occupational Safety and Health Administration (OSHA) then investigated Lepi's work practices and posted a so-called "Notice of Imminent Danger" based on the inspector's belief that Lepi had violated OSHA regulations and exposed its workers to asbestos. Removal and demolition then ceased. REACT wrote to OSHA to express its view that Lepi had not violated any OSHA regulations. After asbestos was found lying openly in the buildings from which asbestos had supposedly been removed, the Housing Authority fired REACT and hired Environmental Operations, Inc. (EOI) to take its place. At trial, a contractor that later replaced Lepi produced a tape-recorded conversation in which a National labor superintendent admitted that he knew that a National employee had planted asbestos in the buildings that Lepi had previously abated.

Lepi met with OSHA and formulated a work plan to address the supposed violations, but EOI, acting for the Housing Authority, requested that Lepi adhere to a higher standard and follow more stringent procedures. Once EOI approved Lepi's work plan, asbestos removal began again. During the three days between the restart

of removal and National's termination of Lepi, however, the EOI inspector documented Lepi as engaging repeatedly in unsafe work practices in violation of Environmental Protection Agency (EPA) and OSHA regulations, including one incident involving the dry sweeping of asbestos. Due to the extended delay resulting from the previous shutdown, National had already contracted with Spirco, another asbestos abatement firm, to remove asbestos from some of the buildings that Lepi was supposed to work on. After receiving evidence of Lepi's failure to follow EPA and OSHA regulations, National terminated Lepi's contract. Asbestos removal on the Darst-Webbe projects was completed by Spirco and another firm. This included removal of asbestos not identified in REACT's original survey, which required, in part, excavating contaminated soil. Lepi sued National for wrongful termination of the agreement and sued ICP for compensation under the payment bond. The parties agree that if a judgment is entered against National, a judgment in the same amount should be imposed against ICP.

## II.

At trial, Lepi's owner, James Lepi, testified that Lepi had suffered damages in the amount of $622,101, plus interest, for services performed. This figure is the sum of job costs and overhead ($565,547) and a standard ten-percent profit margin ($56,554). Mr. Lepi also testified that his company was entitled to the lost profits that it would have received had the full contract price been paid: This amounted to $29,489, a ten-percent profit margin on the difference between the contract price of $917,000 and the damages of $622,101. Lepi's owner further testified that his company was entitled to at least $63,300 in lost profits on change orders necessary to remove asbestos not identified in REACT's first survey of the property. According to Mr. Lepi, the change orders and supplemental work show the "opportunities Lepi Enterprises would have had" absent the wrongful termination. Lepi's construction-contract expert, Stuart Bartholomew, testified that while "custom and practice in the industry" indicated that the change orders and supplemental assignments, such as the soil removal and work done at EOI's request after Lepi left the job site, did not fall

-3-

within the original contract between Lepi and National, it was not "improper" to include anticipated profits on change orders and supplemental work in the damage calculation.

The jury found that National breached its contract with Lepi and awarded Lepi $815,800 in damages against National and ICP. The defendants moved for judgment as a matter of law, remittitur or a new trial, or amendment of the judgment. The district court denied their motion and awarded Lepi prejudgment interest at a rate of nine percent on the entire jury award, calculated from the date that National terminated the contract to the date of the judgment.

### III.

National and ICP appeal the denial of their motion for judgment as a matter of law, contending that Lepi did not prove that it had substantially performed its contractual obligations to National and thus a reasonable jury could not have found that National's termination of Lepi was wrongful. A failure of one party substantially to perform its contractual obligations may excuse the other party's performance. *See Daugherty v. Bruce Realty & Dev. Co.*, 892 S.W.2d 332, 335-36 (Mo. Ct. App. 1995). Here, although National presented some evidence that Lepi violated EPA and OSHA regulations, the witnesses disagreed as to whether these infractions actually occurred and whether, if they had occurred, they were substantial. Given the need to assess credibility in this matter and the debate over the number and seriousness of the supposed violations, it was proper for the district court to deny National's motion.

### IV.

The defendants also argue that the evidence did not support the jury's award of $815,800 in damages. The $622,101 in damages for the services that Lepi performed is undisputed. The jury apparently awarded additional damages for lost profits based both on the contract price and on Lepi's evidence that it would have profited from change orders that became necessary to supplement the original contract. This

additional work included $2.25 million to remove asbestos from the buildings and $1,088,000 to remove contaminated soil. "While an estimate of prospective or anticipated profits must rest upon more than mere speculation, uncertainty as to the amount of profits that would have been made does not prevent a recovery. The claimant must establish the fact of damages with reasonable certainty, but it is not always possible to establish the amount of damages with the same degree of certainty." *Ameristar Jet Charter, Inc. v. Dodson Int'l Parts, Inc.*, 155 S.W.3d 50, 54-55 (Mo. 2005) (internal quotation and citation omitted). Since there was evidence that a firm in Lepi's position would have successfully bid on the change orders associated with the original job, a reasonable jury could have concluded that it was reasonably certain that Lepi would have reaped profits on those change orders in some reasonable amount. The record therefore supports the damage award of $815,800.

V.

Finally, National and ICP appeal the district court's decision to require payment of nine percent in prejudgment interest on the entire jury award from the date that National terminated Lepi's contract until the date of entry of the judgment. Because "[p]rejudgment interest is not allowed on lost profits," *American Laminates, Inc. v. J.S. Latta Co.*, 980 S.W.2d 12, 25 (Mo. Ct. App. 1998), the district court should have awarded interest only on the $565,547 that the jury awarded as damages for job costs and overhead.

We therefore remand the case to the district court for a recalculation of the amount of the judgment in accordance with the principles outlined in this opinion.

_____

-5-