Stan THOMAS, Plaintiff–Respondent,

v.

Josephine O'BRIEN,
Defendant–Appellant.

No. 16352.

Missouri Court of Appeals,
Southern District,
Division Two.

June 20, 1990.

Daniel T. Moore, Scott and Moore, Poplar Bluff, for plaintiff-respondent.

Samuel P. Spain, Hyde, Purcell, Wilhoit, Spain, Edmundson & Merrell, Poplar Bluff, for defendant-appellant.

MAUS, Judge.

By his petition, plaintiff Stan Thomas sought to recover from defendant, Josephine O'Brien, for breach of a written contract to supply "equipment and work" necessary for the construction of a swimming pool addition and deck. O'Brien admitted execution of the document but alleged it was not the complete contract and denied she breached the complete contract. By a counterclaim, she seeks to recover for Thomas' breach of the complete contract. A jury was waived. The trial court made comprehensive findings of fact and conclusions of law. It found for Thomas upon the petition and entered judgment against O'Brien in the amount of $8,395.00. It entered judgment for Thomas upon the counterclaim. O'Brien states three points on appeal. The following is an outline of the facts.

Thomas learned that O'Brien proposed to have built an addition to her home enclosing the swimming pool. After talking with her, he prepared architectural drawings for the addition. He obtained an estimate of the needed materials and their cost from a lumber yard. From those engaged in such work, he obtained estimates for the electrical work and brick masonry work. He prepared a typewritten document on his letterhead which he presented to O'Brien. It read as follows.

"BID PROPOSAL

Jo Obrien Residence
Fisk, Mo.

Material Estamate [sic]:

Framing, Rough Finish, Ceiling Joist,
Trusses, and finished roof .......................................... 12,360.00
Paint, Stain and Waterproofing.......................................... 600.00
Brick Veneer Wainscot, morture [sic] and sand ........................ 2,500.00
Window and Door Package Kit........................................ 19,380.00
Electrical Fixtures ................................................... 1,000.00
Plumbing Fixtures and Connectors ..................................... 500.00
Deck Materials, treated lumber........................................ 4,230.00
　　　　　　　　　　　　　　　　　　　Total Material Estimate ..... 40,570.00

Contract Labor:
(Thomas)　　All concrete work material, forms and labor ................... 5,800.00
(Thomas)　　All equipment rentals, tools and labor for general construction.. 20,000.00
(Pogue)　　All electrical work, wiring, conduits, junction boxes, switches,
　　　　　　covers, and labor to install wiring and fixtures................. 2,000.00
(Birdsong)　All Brick masonry work eqipment [sic] and labor............... 2,500.00
　　　　　　　　　　　　Total Contractor and Sub–Contractor Cost .... 30,300.00"

---

The names in parentheses were handwritten. The following was in a different handwriting at the bottom of the typed portion: "All Materials and Labor Except Tile & Alum. Siding".

Subsequently, Thomas had prepared a typewritten document entitled "CONTRACT AGREEMENT". The preamble was dated May 3, 1988, and recited the names of the parties and provided:

"For the consideration hereinafter named, the Contractor covenants and agrees with said Owner as follows:

*First.* The Contractor agrees to furnish all [equipment][1] and perform all work necessary to complete the *construction of a pool addition & deck. Contractor will supply proof of liability and workman's comp insurance and have all sub-contractors supply liability and comp ins of coverage of all employees on the job, before exercising any performance of construction. Construction as per drawings and specifications—materials for construction by owner, tile floor and aluminum siding by owners.*"

The italicized portion of paragraph First was handwritten on typed lines left blank for the purpose of completing that paragraph. Two additional numbered paragraphs concerned a completion date and extra charges. A following paragraph provided that, as consideration for the contract, O'Brien would pay Thomas $20,000.00 in four payments. Additional provisions were handwritten on the second page. The parties signed the instrument at the bottom of that page.

Construction proceeded. Thomas did the concrete work and was paid $5,800.00 by O'Brien. Pogue did the electrical work and was paid $3,070.00 by O'Brien. Birdsong did the brick masonry work and was paid $4,300.00 by O'Brien. With the exception of those purchased at Gamblin Lumber Yard, O'Brien paid directly for materials supplied for the project. Thomas had an account at Gamblin's and he paid for materials supplied by Gamblin's. O'Brien periodically reimbursed him for the cost of those materials.

Thomas proceeded with the general construction of the addition. When the project

---

1. The typed instrument contained the word "materials" which was crossed out and the word "equipment" was substituted in its place.

was 90% complete, O'Brien had paid him $10,000.00. At this point O'Brien determined the cost of labor and materials would exceed her expectation of $70,870.00. She terminated Thomas' work on the project. Independently, she hired two carpenters who had worked for Thomas. They completed the project in three weeks for $1,605.00.

By his petition, Thomas sought a judgment for the balance of $10,000.00 due for the performance of the Contract Agreement. By her counterclaim, O'Brien alleged Thomas did not complete construction, that she had paid more "than the agreed consideration of $70,870.00" and was forced to hire others to complete the construction and was damaged in the amount of $40,000.00. She prayed for just compensation.

The trial court found that the parties did not contract for the construction of the addition upon the terms of the "Bid Proposal". It found the "Contract Agreement" did constitute a contract between the parties. As stated, the trial court entered judgment on the petition in favor of Thomas and against O'Brien for $8,395.00. It entered judgment on the counterclaim against O'Brien and in favor of Thomas.

■ O'Brien's primary point on appeal is that the trial court erred in failing to find there was a contract between the parties whereby Thomas agreed to provide all labor and materials for the addition, except tile and aluminum siding for $70,870.00. To support this point, O'Brien relies upon the Bid Proposal and her testimony that she agreed to that proposal. Thomas testified that the Bid Proposal was merely an estimate and that his only obligations were an oral contract to do the concrete work for $5,800.00 and the written Contract Agreement to provide equipment and labor for general construction for $20,000.00. As stated, the trial court rejected O'Brien's contention.

"Whether an unsigned writing constitutes a binding contract usually depends on the intention of the parties. The object of a signature is to show mutuality or assent which may be shown in other ways as, for example, by acts or conduct of the parties. 17 C.J.S., Contracts § 62, cited, *Mabry v. Swift & Co., supra,* 145 S.W.2d [163] l.c. 166 [ (Mo.App.1940) ]. In this connection, a bid is no more than an offer to contract." *Sanders v. DeWitt,* 579 S.W.2d 707, 711 (Mo.App.1979).

The trial court found the parties did not mutually intend to contract upon the terms of the unsigned Bid Proposal. In so finding, the court cited the following evidence. The Bid Proposal sets forth only estimates, not firm figures, for materials. O'Brien directly paid Pogue and Birdsong. She paid for all materials either directly or by reimbursing Thomas. The parties did sign the Contract Agreement which does constitute a binding contract and expressly provides "materials for construction by owner, tile floor and aluminum siding by owners."

It was for the trial court to determine the credibility of the witnesses and evaluate the evidence. *Herbert v. Harl,* 757 S.W.2d 585 (Mo. banc 1988). The trial court resolved the conflicts in the evidence in favor of Thomas. The evidence supports that resolution and O'Brien's primary point has no merit.

■ By a separate point, O'Brien contends the trial court erred in finding " 'The only sum to be paid to the Plaintiff was the sum of $20,000.00 as set forth in the contractual agreement, Plaintiff's Exhibit 2,' and 'The only contractual agreement between the parties is shown by Plaintiff's Exhibit 2' ". To support this point, she cites the oral agreement for the concrete work, her payment therefor and reimbursement for materials. It was undisputed that agreement and payments were made. However, the focus of the trial court was upon what contractual agreement remained to be performed and was breached. In that context, the findings of the court were supported by the evidence. The point is denied.

■ By her final point, O'Brien complains about the amount of the judgment against her. She cites Thomas' testimony that before his performance was terminated he incurred expenses of $11,607.75 and

his interrogatory answer that it would cost him $2,800.00 for labor to complete the job.

"When an owner breaches a construction contract by preventing the contractor from performing the work, the measure of damages is the contract price less the amount it would have cost the contractor to perform." *Fort Zumwalt School Dist. v. Recklein*, 708 S.W.2d 754, 755–756 (Mo.App.1986).

O'Brien testified she hired workmen who had been employed by Thomas and they completed the job for $1,605.00. This supports the action of the trial court in awarding Thomas the unpaid balance of $10,000.00, less $1,605.00. The last point is denied and that judgment is affirmed.

HOGAN, C.J., and FLANIGAN, P.J., concur.