**Donald MILLER and Francine
Miller, Appellants,**

v.

**Orville M. BAKKEN and Steve Bakken,
d/b/a Rayview Builders,
Respondents.**

**No. WD 55060.**

Missouri Court of Appeals,
Western District.

Nov. 3, 1998.

Judith A. Sharp, Liberty, for Appellants.

James H. Ensz, Kansas City, for Respondent Steve Bakken, d/b/a Rayview Builders.

Before SMART, P.J., and ELLIS and HOWARD, JJ.

HOWARD, Judge.

Donald and Francine Miller appeal the dismissal of their petition for breach of contract and breach of warranty. The Millers contend that the trial court erred by dismissing their petition as premature because they did not first give the builder an opportunity to correct the deficiencies in his work.

Reversed and remanded.

In December of 1991, the Millers noticed that the foundation of their house had settled. They contacted some contractors to get estimates, and among those submitting bids was Steve Bakken, d/b/a Rayview Builders. Mrs. Miller testified at trial that, when Bakken came to view their home, he was told that they also wanted him to fix everything deficient in the basement, including longstanding leaks in the southeast and southwest corners. Bakken, on the other hand, testified that he was not told that the Millers were having a problem with leaks in the southeast and southwest corners of the basement. Bakken never excavated the outside of the basement walls in the southeast and southwest corners.

Bakken's bid, which later became the contract between the parties, provided that Bakken would:

Repair settlement of North and East foundation walls as follows: Excavate beneath footing of said walls as necessary to install 9 [nine] reinforced concrete underpin pier pads, to be used to jack said area of foundation walls and footings back to their original positions and to prevent further settlement of same. Check center I-beam and shim same as necessary to level house. Excavate West foundation wall to footing. Patch all cracks and waterproof exterior foundation walls. Install drain tile on West, North and East foundation walls to sump pump installed in utility room area. Backfill dirt, tamp and grade for drainage. Replace bushes and fence. Replace step and sidewalk section as necessary. Reseed damaged area of yard. Tap existing sewer in basement for future stool connection. Replace concrete floor around sump pump. Repair any damage to waterlines or gas lines. Owner responsible for re-

placement or repair of sheetrock or paneling removed for access.

The bid also included the following warranty provisions:

> 3 year warrantee on area of foundation repaired to remain structurally sound, free of other than minor cracking or settlement as could be expected in a new foundation. Warrantee limited to releveling of house or additional underpinning by contractor as could become necessary. Warrantee against leakage thru repaired walls and sump pump will also apply for a period of 3 years.

In response to the Millers' request, Bakken modified his bid to extend the warranty from three years to five years. The Millers accepted Bakken's bid on January 30, 1992.

The Millers were out of town in February and March of 1992, when Bakken performed the repairs on the home. After they returned to their residence in September of 1992, they noticed that their basement continued to leak at the southeast and southwest corners. One year later, in September of 1993, the Millers complained to Bakken about the leaks in these areas of the basement. Bakken was unable to locate the source of the leak in the southeast corner without removing the sheetrock from the wall, so he attempted to resolve the problem by installing a window well drain. To stop the leak in the southwest corner, Bakken recommended caulking the crack and diverting the downspout, and Mr. Miller offered to do that work himself.

On October 6, 1993, the Millers sent Bakken a letter advising him that the basement was still leaking. They had removed the sheetrock from part of the basement wall and saw several cracks which they thought were responsible for the leaks. In November, Bakken went to the Miller residence and injected epoxy into the cracks. On December 14, 1993, the Millers sent Bakken another letter stating that the epoxy injections were effective in keeping the water out, but adding that they were now experiencing another leak on the basement wall. Apparently, the Millers had removed more sheetrock, exposing additional cracks, so Bakken returned to their house and injected those cracks with epoxy.

In August of 1994, Bakken asked for a meeting with the Millers and Ken Blom, an engineer retained by the Millers, in order to determine what needed to be done to solve the leakage problems. The meeting took place the following month, and resulted in a list of repairs which Bakken agreed to perform free of charge. However, in a later conversation, the Millers' attorney informed Bakken that the repairs agreed upon were insufficient, and that the Millers had retained another engineer, who had inspected the basement and prepared a report. Based upon the new engineer's report, the Millers wanted to make changes in the list of repairs to be performed. In a letter dated November 22, 1994, Bakken proposed a new list of repairs to be performed based upon the new engineer's report. However, the Millers refused to allow Bakken to enter their premises to perform the work.

On June 16, 1995, the Millers filed a petition for damages in the associate division of the Jackson County Circuit Court. The first three counts of the petition asserted claims against Bakken and his father, Orville Bakken, for breach of contract, breach of implied warranty, and breach of express warranty. The petition also asserted claims of breach of contract and negligence against Blom, but those counts were dismissed prior to trial.

Following a bench trial, the court found that Bakken "performed the work provided for in the contract except that he did not excavate and waterproof" the disputed locations in the basement. Nevertheless, the trial court concluded that the Millers "should not have filed suit against Defendant, Steve Bakken d/b/a Rayview Builders, without first giving said Defendant the opportunity to correct any deficiencies or defects under the terms of the contract between the parties and to fulfill his warranty as set forth in said contract." The court also concluded that Orville Bakken was "not liable to Plaintiffs as he had no connection whatsoever with the transaction at issue." Accordingly, the court dismissed with prejudice the claims against Orville Bakken, and dismissed without prejudice the claims against Steve Bakken.

■ In their first point on appeal, the Millers claim that the trial court erred by dismissing their claim against Steven Bakken on the ground that they did not give Bakken the opportunity to correct any defects in his work and to fulfill his warranty. They argue that the contract in this case did not include a provision requiring them to allow Bakken the opportunity to correct defects, and therefore Missouri law did not require them to provide such an opportunity before filing suit. Alternatively, they argue that they did, in fact, give Bakken sufficient opportunity to correct any defects in his work before refusing to accept further repairs from him.

In dismissing the Millers' claim against Bakken, the trial court relied upon *Ballwin Plaza Corp. v. H.B. Deal Construction Co.*, 462 S.W.2d 687 (Mo.1971), in which the owner of a shopping center sued its general contractor over the alleged defects of a heating and air conditioning system. The contract in that case provided that the defendant "shall remedy any defects due thereto and pay for any damages to other work resulting therefrom, which shall appear within a period of one year from date of substantial completion." The Supreme Court ruled that the plaintiff "should not have filed suit against defendant for damages from any such defects during such period of time without first giving defendant the opportunity to correct defects under the terms of the contract between the parties." 462 S.W.2d at 690.

■ As this court noted in *Dynacon Builders v. Janowitz*, 892 S.W.2d 807, 810 (Mo.App. W.D.1995), the holding of *Ballwin Plaza* is limited to those cases where the contract at issue contains a provision which requires the plaintiff to allow the defendant the opportunity to correct defects. Specifically, *Dynacon* said of *Ballwin Plaza* that "[b]ecause the contract at issue in that case had a provision which guaranteed that any defect in materials or work would be cured within a set period, the plaintiff breached the contract by failing to give the defendant an opportunity to correct the defect before the plaintiff sued." *Id.* On the other hand, where the contract contains no such provision, a plaintiff is not required to allow the defendant an opportunity to repair before bringing suit. *Id.*; *Arst v. Max Barken, Inc.*, 655 S.W.2d 845, 848 (Mo.App. E.D.1983).

The contract at issue in the case at bar does not contain a provision requiring the opportunity to correct defects. Instead, the contract merely states that there was a five-year "warrantee against leakage thru repaired walls." The distinction between a simple warranty provision and an "opportunity to cure" provision is illustrated in *AAMCO Transmission v. Air Systems, Inc.*, 459 N.E.2d 1215 (Ind.App.1984), a case that is strikingly similar to the case at bar. In *AAMCO*, the plaintiff brought suit alleging faulty repair work on a van. The contract included a provision stating that repairs were subject to a "full 90 day warranty," and Aamco contended that the provision obligated the plaintiff to allow Aamco to correct the defective work prior to maintaining an action for breach of warranty.

The Indiana Court of Appeals disagreed, noting that, in this context, the term "warranty" implies an agreement to be responsible for all damages that arise from the falsity of an assurance that the parts and labor necessary to effectuate the repairs would perform effectively for the warranty period. 459 N.E.2d at 1217. The court determined that, contrary to Aamco's assertion that a breach of its warranty could only occur after it was given the opportunity to fulfill that warranty, the breach occurred with Aamco's faulty initial repairs. *Id.* The court ruled that Aamco's attempt to restrict the scope of its warranty was defeated by its failure to inform the plaintiff prior to the initial repairs that an "opportunity to cure" was a term of its warranty. *Id.*

We find this reasoning of *AAMCO* to be persuasive, and consistent with our decision in *Dynacon* that, unless a contract contains a provision requiring an opportunity to cure defects, as was the case in *Ballwin Plaza*, such an opportunity is not a prerequisite to a right to bring suit. The warranty provision in the case at bar makes no mention of an opportunity to cure defects; consequently, the trial court erred in concluding that a dismissal of the petition was mandated by *Ballwin Plaza*.

Because of our disposition of the Millers' first point on appeal, we need not address their second point. The judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion.

All concur.