**WISCH & VAUGHAN CONSTRUC-
TION CO., d/b/a Wavco, Plain-
tiff–Respondent,**

v.

**MELROSE PROPERTIES
CORPORATION, Defendant–Appellant.**

**No. 22768.**

Missouri Court of Appeals,
Southern District,
Division Two.

May 16, 2000.

Mark G. Arnold, Harry B. Wilson, Nancy L. Ripperger, Husch & Eppenberger, L.L.C., Jefferson City, for appellant.

Richard Wolff, Kappel, Neill & Wolff, L.L.C., St. Louis, David L. Wieland, Yates, Mauck, Bohrer, Elliff, Croessmann & Wieland, P.C., Springfield, for respondent.

JAMES K. PREWITT, Judge.

Defendant Melrose Properties Corporation appeals from a judgment in accordance with a jury verdict in favor of Plaintiff. Plaintiff sued Defendant for breach of contract for Defendant terminating Plaintiff as the contractor for the construction of a motel.

Defendant contracted with Plaintiff to build a two-story, sixty-unit motel in St. James, Missouri, for which Defendant would pay Plaintiff the sum of $1,534,218.00. A provision for price adjustments was included, in the event that any changes or additions to the plans increased the scope of the work and resulted in an increase in cost or labor for Plaintiff.

The contract between the parties, dated April 15, 1994, included that the motel be substantially complete within 142 calendar days after a "Notice to Proceed" was issued by Defendant. The project was to be "fast tracked," meaning that construction would begin prior to the completion of final architectural plans and specifications.

In the event of Plaintiff's default due to failure to perform diligently, abandonment or cessation of work, or failure "in any way to perform the conditions," the contract provided that Defendant could, after providing seven days' notice, terminate the contract, take over the construction or any part thereof, and finish the project. Under such default, any unpaid balance would be withheld pending completion of the project. If the unpaid balance exceeded the expense of completion, the excess would be paid to Plaintiff, but if the expense of completion exceeded the unpaid balance, such excess would be paid by Plaintiff to Defendant, in addition to remedies for liquidated damages.

"Retainage," as provided for in the contract, was to be withheld from payments to Plaintiff, at the rates of: 10% until architect's notification that work is at least 50% complete; 5% from the time work is 50% complete until substantially complete; and finally, two times the amount of the cost of all items on Defendant's "punch list" (essentially clean-up and debris removal) from the time of substantial completion until total completion. Final payment to Plaintiff would be made when lien releases were provided to Defendant.

Notice to proceed with construction was issued June 21, 1994. Plaintiff had commenced excavation and other site preparation as early as May, 1994. Final plans were received from Defendant's architect on July 23, 1994. The 142–day "substantially complete" provision would have required completion by November 10, 1994. Three change orders were ultimately "approved," which resulted in an increase of $120,695.98 ($1,654,913.98 total contract price after adjustment).

Plaintiff continued with the construction after the expected completion date of November 10, 1994. On January 5, 1995, it requested an additional 51 days to complete the project. On February 3, 1995, Plaintiff predicted the construction would be completed by April 6, 1995. When Defendant requested that Plaintiff work

weekends and schedule double shifts (without an increase in the contract price), Plaintiff refused. Defendant then gave seven days' notice of termination, allowing an additional seven days at Plaintiff's request for negotiations. Defendant terminated Plaintiff and took over the construction on February 24, 1995. The motel opened May 29, 1995.

Plaintiff brought its action, alleging breach of contract in Defendant's termination of Plaintiff as contractor and in preventing Plaintiff from completing the project. Defendant counterclaimed, alleging breach of contract in that Plaintiff failed to complete the project in the time required under the contract.

Defendant filed a motion for a directed verdict following the close of the evidence, which the court denied. The jury returned a verdict of $170,283.00 for Plaintiff. There was no verdict returned on Defendant's counterclaim, and the trial court dismissed the counterclaim with prejudice.[1]

In its first point, Defendant asserts that the trial court erred in denying its motion for directed verdict with respect to Plaintiff's claim for extra work for three reasons:

> A. [Plaintiff] was not entitled to such damages, in that such work was additional work included within the contract, rather than extra work not contemplated by the contract;
>
> B. If such damages were extra work, [Plaintiff] was not entitled to collect them, in that [Plaintiff] failed to comply with the contract conditions to obtaining additional compensation;
>
> C. [Plaintiff] is not entitled to quantum meruit damages, in that it neither pleaded nor proved such damages

■ When reviewing a failure to grant a directed verdict for the defendant, the evidence is viewed in the light most favorable to the plaintiff, the plaintiff is afforded all reasonable inferences from the evidence, and any of the defendant's evidence that contradicts the plaintiff's claim is disregarded. *Crabtree v. Bugby,* 967 S.W.2d 66, 70 (Mo.banc 1998).

We first discuss Plaintiff's claim for extra work. Defendant contends that "[v]irtually all of" what Plaintiff claimed was extra work was work "either within 'the general scope' of its component list, or covered by Change Order No. 2." Further, Defendant contends Plaintiff's only remedy would have been to submit a change order.

■ "Extra work in the context of building contracts refers to work not contemplated by the parties at the time of contract and entirely independent of what is required in performance of the contract." *Waddington v. Wick,* 652 S.W.2d 147, 150 (Mo.App.1983). "A distinction is sometimes made between extra work, additional work, and alterations. Additional work is work necessarily required in the performance of the contract, but the necessity of which arises from unanticipated conditions. Alterations are changes in the form of the work which do not destroy its identity." *Id.,* at 150 n. 5. Generally, determination of whether item or activity is "extra" and not something already contemplated under the contract, is question for finder of fact. *Gilmartin Bros., Inc. v. Kern,* 916 S.W.2d 324, 331 (Mo.App.1995).

Plaintiff sought damages for twelve items of "extra work," denominated in the jury's verdict as "change of scope work." The jury awarded damages for eleven of the twelve items. It is apparent that if Plaintiff made a submissible case on any of the twelve items, then the motion for directed verdict for the extra work was properly denied. Neither the motion for directed verdict nor the points relied on presented here alleged error as to any of the specific twelve items.

Defendant emphasizes that under the contract Plaintiff was to construct the mo-

---

1. No issues are raised regarding the counter-claim.

tel in accordance with the architect's detailed drawings without additional compensation if they were within "the general scope" of the component list or written change orders. Plaintiff does not contend otherwise, but argues that all of the items for which it was awarded damages were outside the general scope, and thus extra work. We conclude that at least some, if not all, of those items were outside the general scope of the work as it was originally contemplated.[2]

■ There was evidence that the initial documents did not require any steel reinforcing rods in the concrete parking lot. After the contract was agreed to, the steel dowels were added. The same was true for a slotted drain, apparently added for storm drainage. Construing the evidence most favorable to the Plaintiff, as we must do, the trial judge did not err in denying the motion for directed verdict. As earlier noted, whether all of the twelve items should have been submitted is not a question presented and thus necessary to decide. We only decide whether a directed verdict should have been granted and conclude that there was no error in the trial court not doing so.

The second portion of point one asserts that even if some of the damages submitted were extra work, Plaintiff was not entitled to recovery in that it failed to comply with contract conditions. Defendant contends that Plaintiff was not entitled to compensation for such work unless it complied with the change order provisions of the contract. The contract provided that change orders were to be written, signed by "Owner and Owner's architect," and submitted within twenty-one days after it was determined a change would be necessary. Because Plaintiff did not comply with the contract provisions setting forth the notice and "in writing" requirements, Defendant contends Plaintiff is not entitled to recovery for those items.

Plaintiff counters that a course of conduct developed throughout the period of construction wherein the requirement that change orders be in writing and signed was waived by the parties.

■ When a contract requires a contractor to obtain a written work order before beginning any extra work, the contractor may not recover for the work unless it obtains either the written order or a waiver by the landowner. *Ken Cucchi Constr. Inc.. v. O'Keefe,* 973 S.W.2d 520, 524–25 (Mo.App.1998). A contractor may show that the landowner waived the requirement of a written work order by presenting evidence that the parties orally agreed upon the extras. *Id.,* at 525.

■ Habitual acceptance of extra work done on oral change orders in connection with a contract, and payment therefore, results in waiver of any contract clause providing that no claims for extra work or material shall be allowed unless the same be pursuant to a written change order. *Winn–Senter Constr. Co. v. Katie Franks, Inc.,* 816 S.W.2d 943, 946 (Mo. App.1991). Waiver of a writing requirement in a contract may be established by presenting evidence that the parties agreed to the changes and the changes were completed. *Gilmartin Bros., Inc.,* 916 S.W.2d at 329.

■ There was testimony from the president of Plaintiff that Defendant requested changes and additions to a number of components of the project throughout the construction by Plaintiff. Three change orders were submitted. Neither Change Order number 2 nor Change Order number 3 were executed in accordance with the signature requirements. Change Order number 2 was not signed by anyone. Change Order number 3 was signed only by the president of Plaintiff. There was evidence that the parties orally agreed to the changes in the unsigned Change Order

---

**2.** Obviously, on a project such as this which is to be "fast tracked," there is ample opportunity, if not almost a certainty, that disputes will arise between the general nature of the initial documents and the final architectural plans and specifications.

number 2, and that Plaintiff proceeded with the work mentioned in that change order. Plaintiff's president also testified that they were paid for an increase in contract price covered by that change order. This and other evidence indicates that the parties waived strict compliance with the provisions for written change orders.

The remaining contention under point one is that the trial court erred in denying the motion for directed verdict because Plaintiff "is not entitled to quantum meruit damages, in that it neither pleaded nor proved such damages." This contention is not mentioned in the motion for directed verdict. Obviously, the trial court could not err in failing to grant the motion on a ground not contained in it, nor is this contention preserved for our review. *See Kincaid Enterprises, Inc. v. Porter*, 812 S.W.2d 892, 895 (Mo.App.1991). Point one is denied.

For point two, Defendant states that the trial court erred in denying its motion for directed verdict with respect to alleged lost profits because there is no competent evidence of such damages because:

A. [Plaintiff's] evidence of lost profits omits costs that substantially exceed the alleged lost profits; and

B. [Plaintiff's] evidence of the cost of completion is too speculative to support an award of lost profits.

■■■■ "Damages for loss of profits caused by breach of contract are recoverable." *Coonis v. City of Springfield*, 319 S.W.2d 523, 528 (Mo.1958). The jury may not speculate as to what might be probable or expected profits as an element of damages. *Id.*

■■■ Anticipated profits lost because of actionable conduct of another are recoverable only when they "are made reasonably certain by proof of actual facts which present data for a rational estimate of such profits." *Jack L. Baker Co's., Inc. v. Pasley Mfg. & Distributing Co.*, 413 S.W.2d 268, 270 (Mo.1967); *Oster v. Kribs Ford,*

*Inc.*, 660 S.W.2d 348, 353 (Mo.App.1983); *Gesellschaft Für Geratebau v. GFG America Gas Detection, Ltd.*, 967 S.W.2d 144, 147 (Mo.App.1998).

■■■■ State law regarding lost profits has delineated a distinction between evidence establishing the fact of damage and evidence establishing the amount of damage. *Whitman's Candies, Inc. v. Pet Inc.*, 974 S.W.2d 519, 525–26 (Mo.App. 1998). The loss of profits is of a character that defies exact proof. *Id.*, at 526. It is evidence of net profits, not proof of income and expenses that is essential to a claim of lost profits. *Id.* at 527.

■■■ To obtain damage award for lost profits, plaintiff must produce evidence which provides an adequate basis for estimating lost profits with reasonable certainty; proof of actual facts which present a basis for rational estimate of damages without resorting to speculation is required, and the amount of estimated loss of profits should be supported by best evidence available. *Meridian Enterprises Corp. v. KCBS, Inc.*, 910 S.W.2d 329, 331(Mo.App.1995).

■■■ Where damages are in the nature of lost profits, all that can be required is to produce all relevant facts tending to show the extent of the damages, and one is not excused from a breach of contract resulting in damages simply because the particular amount of damages may not be established with certainty. *Smith Moore & Co. v. J.L. Mason Realty & Inv., Inc.*, 817 S.W.2d 530, 534 (Mo.App.1991).

In argument under point A of this point, Defendant states that "there was no real dispute over the contract price (including change order) or the amount [Defendant] had paid. The dispute was over the amount it would have cost [Plaintiff] to complete construction." Defendant contends that Plaintiff omitted two elements of cost which would have exceeded the

award for lost profits.[3]

Defendant states that Plaintiff's damage calculations listed unpaid retainage of $69,-120.00, which the president of Plaintiff conceded he would have to pay to his subcontractors. That is a misstatement of the record. An exhibit entitled "Summary of Wavco [Plaintiff's] Damages" shows on page one that Plaintiff was seeking damages consisting of: liquidated damages withheld, $31,500.00; unpaid retainage, $69,120.00; and unpaid profits, $38,000.00; for a total of $138,620.00. On the second page of that exhibit, in a listing by "Vendor[s]/Subcontractor[s]," Plaintiff shows "Retainage (Wavco)" for a total of $62,-134.65. It is the figure on page two that the president of Plaintiff stated would be paid to the subcontractors.[4]

In any event, it is obvious that if the $69,120.00 was being improperly withheld from past construction work then Plaintiff should receive it. Any retainage had no relationship to the amount of profits in connection with the cost of completion had Plaintiff completed the project. Those additional profits, if they existed, would necessarily have been realized after the work for which the retainage was withheld. Retainage has to do with the time of payment, not the cost of construction. In other words, if the subcontractors' cost is included in the profit calculation, retainage withheld from them becomes irrelevant to the lost profit issue. The subcontractors' cost is the critical factor in calculating lost profits, not the amount Plaintiff withheld from them as retainage.

Referring back to its first point, Defendant contends that Plaintiff was not entitled to compensation of $69,663.00 for extra work, as awarded by the jury. Defendant contends that this amount must be included in the cost of completion, as Plaintiff was not entitled to additional compensation for it. As we found no merit in point one, this contention must likewise fail.

The second prong of point two is Defendant's assertion that the evidence of the cost of completion presented by Plaintiff was too speculative and that in calculating profits it was the completion cost to the Defendant that must be used. In support of this contention, Defendant primarily relies upon this District's opinion in *Thomas v. O'Brien,* 791 S.W.2d 4 (Mo.App.1990).

When the owner breaches a construction contract by preventing the contractor from performing the work, the measure of damages is the contract price less the amount it would have cost the contractor to perform. *Ft. Zumwalt School Dist. v. Recklein,* 708 S.W.2d 754, 755–56 (Mo.App.1986).

*Thomas* does not require that the owner's actual cost to complete must always be used to measure a contractor's damages, but agreed that it can be used. The contractor answered an interrogatory that it would cost him $2,800.00 for labor to complete the job, whereas the owner hired workmen who had been employed by the contractor and completed the job for $1,605.00. The court used the latter figure in assessing damages. Defendant contends that this decision supports its contention because "this court rejected the owner's argument that the contractor's estimate control, . . ." That may be partially true, but it does aid Defendant. The jury was entitled to consider both the contractor's estimate and the defendant's cost of completion. If it actually awarded damages for lost profits, and we are not sure whether it did so, it was for the jury to decide which figure was proper. Point two is denied.

For its remaining point, Defendant contends that the trial court erred in

---

3. Plaintiff asserts the jury did not give it "lost profits." Whether it did so is not clear, and as it may have, we consider this contention.

4. The transcript refers to an exhibit numbered 7 on page two when this was brought out during cross-examination. The record does not contain an Exhibit 7 either here or in the trial court. From the discussion, it is apparent that it was Exhibit 107 that was being referenced.

overruling its objection to a question to Defendant's president during his cross-examination, "because the question was manifestly unfair and misleading, in that it assumed that [Plaintiff] was correct on the central factual dispute between the parties."

Plaintiff asserts that Defendant's objection "at trial was insufficient in that he did not state specific grounds for the objection," and that "[s]uch an objection is general and fails to include the mandatory specific grounds for the objection."

Mr. Weinbaum, was asked:

"I want you to assume for purposes of this question that those events were occurrences that were beyond the control of Wavco, and those occurrences prevented substantial completion by November 11, 1994. Would you agree – if those occurrences were defined in this contract and were beyond [Plaintiff's president's] control, would you agree that those events would justify an extension of this contract to at least April 6, 1995, just assuming that those facts are true?"

The objection was: "Your Honor, I object to the form of the question. I don't think a hypothetical question in this circumstance is warranted."

An appellate court will not find error unless an objection at trial is specific. *Nangle v. Brockman*, 972 S.W.2d 545, 548 (Mo.App.1998). On review, we only consider an objection to evidence on the same basis as that presented to the trial court. *Frey v. Barnes Hospital*, 706 S.W.2d 51, 56 (Mo.App.1986). The present contention was not presented to the trial court. Point three is denied.

The judgment is affirmed.

MONTGOMERY, P.J., and GARRISON, C.J., concur.