**OZARK MOUNTAIN GRANITE & TILE CO., Plaintiff–Respondent,**

v.

**DeWITT & ASSOCIATES, INC., Defendant–Appellant.**

No. SD 31529.

Missouri Court of Appeals, Southern District, Division One.

Aug. 3, 2012.

Michael D. Textor, John M. Tyner, Springfield, for Appellant.

Brett W. Roubal, Springfield, for Respondent.

NANCY STEFFEN RAHMEYER, Judge.

DeWitt & Associates, Inc. ("DeWitt"), brings this appeal from a judgment against it and in favor of Ozark Mountain Granite & Tile Co. ("Ozark Mountain"), on its claims for breach of contract and for quantum meruit. DeWitt claims trial court error in failing to enforce an article of the subcontract. It further claims that the judgment was against the weight of the evidence on both claims. We find no error and affirm the judgment.

In the light most favorable to the judgment, the following evidence was adduced.[1] DeWitt, a general contractor, had a contract with Missouri State University for the carpentry package of Construction Issue No. 4, a phase of the construction of JQH Arena. The contracted Architect/Engineer on the project was Ellerbe Becket, Inc., an arena designer architect.[2] In order to complete its work, DeWitt entered into a Subcontract Agreement ("the Subcontract")[3] with Ozark Mountain for the sum of $145,470.00 for granite fabrication and installation in the JQH Arena luxury suites. Ozark Mountain is a company that sells, fabricates, and installs granite in both commercial and residential construction.

Article 1.1 of the Subcontract states:

1.1 The Contractor employs the Subcontractor as an independent Contractor, to perform the following part of the Work that the Contractor has contract with the Owner to provide on the project:

*Specification* 07900–Joint Sealants, as applicable to your

*Sections:* scope of work;

    09380—Cut Natural Stone Tile.

    Including Alternate No. 9.

The Subcontractor agrees to perform such part of the Work (hereinafter called "Subcontractor's Work") under the general direction of the Contractor and subject to the final approval of the Architect/Engineer or other specified representative of the Owner, in accordance with the Contract Documents. Subcontractor will furnish all of the labor and materials, along with competent supervision, shop drawings and samples, tools, equipment, scaffolding, and permits, which are necessary for such performance.

Listed as a Contract Document in the Subcontract was Addendum No. 5, which modified the scope of work to "Granite Countertops and drinkrails per Specification Section 09380, including, but not limited to granite tops, aprons, substrates, sealants, and adhesives." The Subcontract also required Ozark Mountain to submit shop

---

1. *L.L. Lewis Const., L.L.C. v. Adrian,* 142 S.W.3d 255, 259 (Mo.App. W.D.2004) ("This [C]ourt reviews the evidence, along with all reasonable inferences, in the light most favorable to the trial court's judgment and disregards all contrary evidence and inferences.")

2. Cheryl Doran testified that she and John Luce, both employees of Pellham Phillips Architects, acted as local joint project managers for Ellerbe Becket and, as such, they were "authorized to make decisions and answer questions about what was required by the contract documents" and to "make determinations with respect to the interpretation of the drawings and specifications." Ms. Doran testified at trial because Mr. Luce was ill.

3. DeWitt drafted the Subcontract. In the Subcontract, DeWitt is the "Contractor" and Ozark Mountain is the "Subcontractor."

drawings, which were to be given to De-Witt to ensure that both parties were "on the same page." DeWitt requested shop drawings from Ozark Mountain on more than one occasion and Ozark Mountain prepared the drawings by highlighting areas of the architectural drawings that would be receiving granite, and delivered those drawings to DeWitt. These shop drawings[4] were delivered about three months before the contract was signed and about a year before Ozark Mountain actually began performing work on the arena. In the shop drawings, certain areas were identified as "countertops" and "drink rails." Ozark Mountain cut, fabricated, and installed every granite countertop and every drink rail that was specified in the shop drawings.

During the course of Ozark Mountain's performance under the Subcontract, a dispute arose as to whether certain work was part of the scope of work under the Subcontract. The work included all of the granite located on the divider walls between the suites at JQH Arena as well as the granite that is placed at the bottom of the suites in front of the seats.[5] The work that is in dispute ("the Disputed Work") is horizontal from a wall, drops at an angle down the divider following the staircase down to the bottom of the stairs, and then extends across in front of the seats with glass attached to its top.

The areas labeled "drink rail" in the architectural drawings are 42 inches from the floor and 12 inches wide. In contrast, the Disputed Work is 22.5 inches from the floor and between 2.5 and 5.5 inches wide.

Once it became apparent that the Disputed Work had not been installed, DeWitt requested a bid from Ozark Mountain for the remaining work. Ultimately, Ozark Mountain offered to cut and install the granite trim and wall caps for approximately $72,000.00. DeWitt hired a different company to complete the work and paid $93,896.96 to have the Disputed Work completed.

In addition to the Disputed Work, Ozark Mountain made a claim for additional work it performed on the project. During the project, Ozark Mountain did a mock-up of a suite, which included the fabrication and installation of a vanity or sink top and the installation of a wet bar. Despite being constructed according to the plans, there was a problem with the location of the bowl on the vanity due to the way the cabinets were made and the location of the plumbing. The problem was not a problem with the fabrication but with the plans in terms of where the plans indicated the bowl was supposed to be. Ozark Mountain had to redo the granite on the countertop in the mock-up. Ozark Mountain claimed this redo of the granite countertop cost $2,700.00 in additional materials and services rendered as required by the Subcontract.

Prior to the dispute that is the subject of this suit, DeWitt paid Ozark Mountain

4. There was a dispute about what to call the drawings submitted by Ozark Mountain. At trial, the court noted the witness, was testifying about "highlighted portions of the architect's drawings." We will refer to them as shop drawings.

5. The granite described here has also been described by DeWitt throughout the litigation as: "granite trim work at the railings of the glass partitions of the suites"; "granite drink rails including the apron and tops"; "a drink rail which includes granite tops and aprons"; "drink rails or granite tops and aprons"; and "the granite including the drink rail, aprons, and tops[.]" At trial, DeWitt's representative was asked what he calls it today and he replied, "I probably still refer to it as a drink rail or trim, either one." Ozark Mountain referred to the Disputed Work as "trim," "wall caps," and "wall cap trim."

$81,000.00 under the Subcontract for installing countertops and drink rails. Ozark Mountain filed suit against DeWitt to recover damages per the contract. Count I of the Petition claimed that Ozark Mountain completed the work required under the Subcontract and claimed DeWitt breached the Subcontract by failing to pay $64,470.00 (the difference between the Subcontract price of $145,470.00 and the $81,000.00 already paid by DeWitt). Count II sought recovery under a quantum meruit theory for the $2,700.00 Ozark Mountain claimed it was owed for the additional materials and services related to the redo of the mock-up suite. DeWitt filed its Answer and Counterclaim, alleging that Ozark Mountain "failed and refused to install the granite drink rail, including the apron and tops inside the glass rails at the suites" and demanding $23,427.00 in damages. DeWitt amended its Counterclaim to demand $29,426.00 in damages (the difference between the amount which remained owing under the Subcontract, $64,470.00, and the cost incurred by DeWitt to have the Disputed Work completed, $93,896.00). The court found in favor of Ozark Mountain on both counts, awarding $64,470.00 and $2,700.00, respectively, plus prejudgment interest and taxable court costs. The court also found against DeWitt on its counterclaim. DeWitt appeals; it also seeks recovery of expenses incurred on appeal, including reasonable attorney's fees, pursuant to Articles 9 and 10 of the Subcontract.

## Point I

In its first point, DeWitt argues that the Subcontract contained a specific provision, Article 1.3, which defined the Architect/Engineer on the project as the arbiter of any disputes relating to the interpretation of the drawings and specifications and that the trial court erred by ignoring the testimony of Cheryl Doran that the Disputed Work consisted of tops and aprons. Article 1.3 of the Subcontract reads:

> Should questions arise with respect to the interpretation of the drawings and specifications, such questions shall be submitted to the Architect/Engineer and his decision shall be final and binding. If there is not an Architect/Engineer for this project, the Contractor's decision shall be followed by the Subcontractor.

To rely upon Article 1.3 of the Subcontract, DeWitt must have submitted to the "Architect/Engineer" the question regarding the interpretation of the drawings and specifications. DeWitt failed to do so.[6] The architect on the project was Ellerbe Becket, Inc. There was no evidence that DeWitt submitted any question with respect to the interpretation of the drawings and specifications to the Architect/Engineer at any time prior to the alleged default by Ozark Mountain. At trial, DeWitt did submit the testimony of a licensed designer employed by Pellham Phillips Architects to testify that during the bidding process there was a question about the interpretation of whether or not the Disputed Work was required under the cut natural stone specifications. Even if we ignore the fact that the testimony was not given prior to the alleged breach of the contract by Ozark Mountain, the testimony of the designer simply does not comply with the explicit terms of Article 1.3. Pellham Phillips was not the architect on the contract and there was no evidence that

---

**6.** Ozark Mountain argues that DeWitt did not plead the affirmative defense of Article 1.3, nor did it raise the defense until the close of all the evidence, thereby waiving its claim. We do not address those alternative claims by Ozark Mountain though they may have merit.

the question was presented to the architect on the contract.[7] Point I is denied.

## Point II

■ DeWitt claims that the trial court erred in entering judgment in favor of Ozark Mountain on Count I and DeWitt's counterclaim because its judgment was against the weight of the evidence. DeWitt argues that the weight of the evidence showed that the Disputed Work was required to be completed by Ozark Mountain in that: (1) the architect testified that all of the Disputed Work was required under Ozark Mountain's scope of work, specifically, Specification 09380 as modified by Appendix C of Addendum No. 5; (2) Ozark Mountain admitted that the Disputed Work included items normally furnished and/or installed by them; and (3) there was testimony and photographs showing that drinks and other items were capable of being set on the Disputed Work.

■ The judgment of the trial court is presumptively valid and it is the burden of the appellant to prove that it is incorrect. *Houston v. Crider,* 317 S.W.3d 178, 186 (Mo.App. S.D.2010). *In Houston,* this Court set forth a discussion of a point on appeal that challenged a judgment as being against the weight of the evidence:

> Weight of the evidence refers to weight in probative value, not quantity or the amount of evidence. The weight of evidence is not determined by mathematics, but on its effect in inducing belief. Thus, an against-the-weight-of-the-evidence challenge presupposes the threshold issue of the existence of substantial evidence supporting a proposition necessary to sustain a judgment, but, nevertheless, challenges the probative value

of that evidence to induce belief in that proposition when viewed in the context of the entirety of the evidence before the trier of fact. Although consideration of probative value necessarily involves some consideration of evidence contrary to the judgment, we nevertheless defer to the trial court as the finder of fact in our determination as to whether that judgment is against the weight of the evidence. Accordingly, where the resolution of conflicting testimony is required to determine the merits of an against-the-weight-of-the-evidence argument, we defer to the trial court's credibility determinations in the same manner as in the resolution of a not-supported-by-substantial-evidence argument. A court will set aside a judgment as against the weight of the evidence only when it has a firm belief that the judgment is wrong.

*Id.* (internal citations and quotations omitted).

There was substantial evidence supporting the judgment. We specifically accept the testimony that Ozark Mountain submitted shop drawings to DeWitt on more than one occasion, highlighting areas that were to receive granite. DeWitt argues that it never received the shop drawings and that they are irrelevant to the contract. In the light most favorable to the judgment, however, we find the shop drawings were delivered to DeWitt prior to the contract.

Under Part 3.1B of Specification Scope 09380, Ozark Mountain was required to "[f]abricate stone countertops in sizes and shapes required to comply with requirements indicated, including details on shop

---

7. DeWitt claims that Ozark Mountain could have deposed someone to find out whether the question had been submitted to the architect, however, it is DeWitt who relies upon Article 1.3 as a defense to its noncompliance with the contract. It was, thus, DeWitt's burden to provide evidence to that defense.

drawings." DeWitt claimed the Disputed Work is one system: that if the contractor was to install the lower section in front of the seats, it would also install the upper section and the section angled down the stairs. The parties debated whether the Disputed Work constituted "countertops" or "drink rail" as indicated on the architectural drawings for which Ozark Mountain would have been responsible for installing under the Subcontract. The Disputed Work was not identified as "countertops" or "drink rail" in the architectural or shop drawings. The architectural drawings denote specific areas with the words "drink rail" and "countertop" with arrows pointing to specific areas in the detail. Again, the Disputed Work was not identified as "countertops" or "drink rail." There were sixteen suites where the Disputed Work was required. DeWitt acknowledged that the areas that the architect labeled in the drawings as "drink rail" are "markedly different" than the Disputed Work in height, width, and level. There is no dispute that Ozark Mountain cut, fabricated, and installed every granite countertop and drink rail that was specified in the architectural drawings. It is a reasonable inference that DeWitt's contention that it intended that granite be installed in other areas was not part of the contract in that the contract specifically mentions "the details on shop drawings." The probative value of the evidence supporting the judgment is not outweighed by the evidence contrary to the judgment. We do not have a firm belief that the judgment is wrong. Point II is denied.

### Point III

■ Ozark Mountain was awarded a $2,700.00 judgment by the trial court under a quantum meruit theory. DeWitt claims that the trial court erred in entering judgment in favor of Ozark Mountain because the weight of the evidence was that the additional work performed was work contemplated under the Subcontract and, therefore, was not "extra" work entitling Ozark Mountain to a claim in quantum meruit. We will not restate DeWitt's burden in claiming that the judgment on that issue is against the weight of the evidence; we simply state that substantial probative evidence was presented to support the judgment.

Point III centers on a mock-up suite display completed by Ozark Mountain. During the course of the JQH Arena project, Ozark Mountain completed and was required to redo the granite countertops in the mock-up of a suite vanity and wet bar. The redo was due to a problem with the suite's vanity, was not the fault of Ozark Mountain, and cost Ozark Mountain $2,700.00. DeWitt requested Ozark Mountain complete the additional work which was not within the scope of the work DeWitt had contracted Ozark Mountain to perform. Ozark Mountain submitted an invoice to DeWitt for $2,700.00, but was never paid.

■ With construction contracts, there is sometimes a distinction between "extra work" and "additional work." *Wisch & Vaughan Const. Co. v. Melrose Properties Corp.*, 21 S.W.3d 36, 40 (Mo. App. S.D.2000). "Extra work" is work "not contemplated by the parties at the time of the contract and entirely independent of what is required in performance of the contract." *Id.* "Additional work is work necessarily required in the performance of the contract, but the necessity of which arises from unanticipated conditions." *Id.* Determination of whether work is "extra" and not something already contemplated under the contract is a question for the finder of fact. *Id.* It is clear that the parties did not contemplate that the mock-up suite would be improperly

designed and, thus, the reworking of the granite was not contemplated by the parties at the time of the Subcontract and is independent of the performance requirements therein. Point III is denied.

The judgment is affirmed.[8]

DON E. BURRELL, P.J., and GARY W. LYNCH, J., Concur.

8. DeWitt's "Written Request for Attorneys' Fees" was a motion taken with the case on appeal. The motion is denied.