Galinda HUBBARD, Appellant,

v.

LINCOLN COUNTY R–III SCHOOL
DISTRICT, Respondent.

No. ED 76390.

Missouri Court of Appeals,
Eastern District,
Division One.

June 6, 2000.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 17, 2000.

Application for Transfer Denied
Aug. 29, 2000.

Janice A. Harder, Hindman, Goldstein & Harder, P.C., Columbia, for appellant.

Steven H. Schwartz, John D. Briggs, Brown & James, P.C., Thomas A. Mickes, Beverly Lucas Propst, Blackwell Sanders, et al., St. Louis, for respondent.

PAUL J. SIMON, Judge.

Galinda Hubbard, plaintiff, appeals the judgment of the Circuit Court of St. Charles County, entered in favor of Lincoln County R–III School District, defendant, on its motion for summary judgment.

On appeal, plaintiff contends that the trial court erred in granting defendant's motion for summary judgment because defendant was not entitled to judgment as a matter of law because genuine issues of material fact still remain in that the record shows that defendant: (1) breached its contract with plaintiff by refusing to place her on extended sick leave, when she met all requirements of the policy and instead appointed a review committee and formulated guidelines specifically for plaintiff's application after receipt of her request in violation of the policy; and (2) acted in an arbitrary, capricious and unlawful manner when it refused to place plaintiff on extended sick leave, appointed a review committee and guidelines after her request rather than as required by the policy, and gave reasons for denying plaintiff's request which did not correspond to the guidelines, the policy or information received by the committee. We reverse and remand.

We initially note that plaintiff's points confuse conclusions of law with issues of fact. However, we are able to glean from her argument the alleged fact issues; we will resolve the matter on the merits.

It is well-settled that when considering an appeal from summary judgment, we review the record in the light most favorable to the non-movant. *ITT Commercial Finance v. Mid–America Marine*, 854 S.W.2d 371, 376 (Mo.banc 1993). Our review is essentially de novo. *Id.* at 376. The criteria on appeal for testing the propriety of summary judgment are no different from those employed by the trial court to determine the propriety of sustaining the motion initially. *Id.* The burden on a summary judgment movant is to show a right to judgment flowing from facts about which there is no genuine dispute. *Id.* at 387.

A "defending" party may establish a right to judgment by showing: (1) facts that negate any one of the claimant's elements facts; (2) that the non-movant has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements; or (3) that there is no genuine dispute as to the existence of the facts necessary to support the movant's properly pleaded affirmative defense. *Id.* at 381.

The non-movant must show by affidavit, depositions, answer to interrogatories, or admissions on file, that one or more of the material facts shown by the movant to be above any genuine dispute is,

in fact, genuinely disputed. *Id.* A "genuine issue" exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts. *Id.* at 382. A "genuine issue" is a dispute that is real, not merely argumentative, imaginary or frivolous. *Id.*

The record in the light most favorable to plaintiff, the non-movant, reveals that she is a tenured teacher who had an employment contract (contract) with defendant pursuant to § 168.106 RSMo (1994) (all further references herein shall be to RSMo 1994 unless otherwise indicated). The contract period began on August 14, 1997 and ran for the school year, with compensation set at $35,556.

The school's Extended Sick Leave policy (policy) is incorporated into the contract by reference. The stated purpose of the policy is to provide financial protection to employees during periods of extended illness or absence due to injury. Payments are "subject to request" once an employee has exhausted all of his or her sick days and ten days have passed without coverage. Coverage is for the duration of the illness during the contract period. The policy provides, in pertinent part:

> A review committee for extended sick leave policy applications will be recognized as an AD HOC committee of the Board of Education. The review committee will have the responsibility of establishing the guidelines for committee consideration and subsequent recommendation. These guidelines *shall be reviewed for the next school year by the July 1 date of the new contract year.*
>
> \* \* \*
>
> The committee shall be appointed annually from a list provided by the CTA President and the Superintendent.

(Emphasis added.)

The Policy further provides that employees seeking coverage send a letter of request to the Chairman of the Review Committee and Superintendent. Committee considers this request under the guidelines established pursuant to the policy, and prepares a recommendation to submit to the Board of Education (Board), which makes the final decision concerning the request.

If extended sick leave coverage is granted, the teacher is entitled to receive salary compensation of eighty percent (80%) for the duration of the sick leave period. Compensation received pursuant to the Policy is to be returned to the District in following contract years at the rate of one-half day returned for each day used, capped at a maximum of five days per subsequent contract year.

In 1992, two other teachers Jane Wilkins and Ann Eckhoff, requested extended sick leave coverage pursuant to the policy. The guidelines in effect at that time were created on July 30, 1991 (the 1991 guidelines) and provide:

> 1. A letter of request to the chairman and to Dr. Lawrence (including a minimum of one (1) physician's statement giving reasonable detail) should be made within twenty (20) days after the last sick day is used, unless mentally or physically unable to make application.
>
> 2. Upon request of committee member, business manager may submit a request on behalf of a staff member in the case they are unable to make application themselves.
>
> 3. Conditions which can be treated outside the school term will not be considered.
>
> 4. All elements of the committee guidelines will in no way override the Board Policy.

The 1991 guidelines were applied to the requests of Jane Wilkins and Ann Eckhoff and the review committee recommended that Board grant the teachers' applications. Based upon the review committee recommendations, Board granted both teachers extended sick leave coverage.

Plaintiff was hospitalized from October 1, 1997 through October 14, 1997 as a result of an episode caused by bipolar affective disorder. Plaintiff's physician, Dr. R. Eugene Holemon, M.D., recommended that she abstain from work for the remainder of the 1997–1998 school year. As of October, 1997, plaintiff had used all of her ten allotted sick days. During the month of October, plaintiff and her husband notified Sandy Kiehne, principal of the school, that plaintiff would not be returning to work for the remainder of the school year. On October 31, 1997, Principal Kiehne sent a letter to the parents of plaintiff's students informing them that the school had found a teacher to replace plaintiff for the remainder of the year. On or about November 15, 1997, plaintiff applied for extended sick leave coverage pursuant to the policy.

When plaintiff submitted her request, there was no review committee in place and the only guidelines established were those promulgated in July 1991. Following receipt of the request, Board formed a review committee (Committee). District employees Dan Busekrus, Patricia Carter, Linda Creech, Principal Kiehne, Joan Willenbrock, Diane Campbell, Linda Clark, Vickie Hopkins, and Martha Kay Richardson, were randomly selected to serve on Committee. Of the nine members selected, at least five knew plaintiff. Committee met and established the following guidelines (hereinafter the new guidelines) to be applied in considering plaintiff's request for extended sick leave coverage:

(a) information from the staff member's physician stating in general terms the medical condition;

(b) a statement from the physician stating the approximate length of absence.

(c) in general, look at the staff member's sick leave pattern/history;

(d) consider the staff member's behavior/activities outside the district job – how does this condition affect them in general?

On December 3, 1997, Committee sent a letter to plaintiff's physician, Dr. Holemon, requesting a statement of plaintiff's "general medical condition," plaintiff's "approximate length of absence," and "any other pertinent information which would help in the decision making process." Dr. Holemon wrote:

I am treating [plaintiff] for Bipolar Affective Disorder, for which she was hospitalized in October, 1997. At this time I do not feel that she is able to return to work and it is my recommendation that she not return to her position for the balance of the 1997–1998 school year. This should allow sufficient time for her medication to become effective with subsequent stabilization of her mood.

Should you have any questions regarding my care of Ms. Hubbard, please call my office.

Applying the new guidelines, Committee advised Board to deny plaintiff's request for extended sick leave. Committee's advisory letter to Board, dated December 12, 1997, provided: "The historical pattern of sick leave used[,] uncertainty of physican [sic] as to exact date of return to classroom[,] and concern of student continuity played heavily in our decision in recommending denying this request." Dan Buskerus, Committee chair, presented the letter to Board and that same day, Board voted unanimously to deny Plaintiff's request.

Plaintiff filed a petition alleging breach of contract and requesting a declaratory judgment and injunctive relief and damages in the amount of $21,807.79 with interest from July 30, 1998, costs and such other relief as the trial court might have deemed just and proper. Defendant filed a motion for summary judgment, alleging that: (1) the undisputed facts demonstrate that no teacher is automatically entitled to be paid during a period of extended sick leave; (2) after Committee examines the facts surrounding the request and makes a recommendation, Board has discretion to

determine whether the teacher should receive compensation during the period, and because the leave is a discretionary benefit, not an entitlement, plaintiff can not demonstrate a contractual right. The new guidelines developed by Committee were universal and the reasons cited by Committee for its recommending denial have a rational basis. Finally, there is no evidence that Board acted in an unreasonable, arbitrary, capricious or unlawful manner in accepting the Committee's recommendation. In support of the motion, defendant filed a copy of plaintiff's petition; the policy; portions of the depositions of plaintiff and her husband; the affidavit and portions of the deposition of superintendent Dr. John Lawrence; portions of depositions of select Committee members including Committee Chair, Dan Busekrus, Principal Kiehne, Linda Ann Clark, Martha Kay Richardson, and Diane Campbell; and various miscellaneous correspondences, including the letter to the parents from principal Kiehne and the letter from plaintiff's physician, Dr. Eugene Holeman.

Plaintiff filed a response to defendant's motion, alleging that there were genuine issues of material facts in dispute, including the ultimate conclusion of whether defendant acted in an unreasonable, arbitrary or capricious manner in refusing to place plaintiff on extended sick leave pursuant to the policy. Plaintiff denied that the guidelines were universal. Plaintiff initially argued that no guidelines had been adopted prior to the request as required by the policy, after being informed by defendant in answers to interrogatories that no one had ever applied for coverage under the policy. In support of her response, she filed a copy of her affidavit; portions of her deposition and those of her physician, Dr. Holemon, superintendent Dr. Lawrence, and committee members Dan Busekrus, Principal Kiehne, Linda Ann Clark, Martha Kay Richardson, and Diane Campbell; the list of Committee guidelines; the letter to the Committee from Dr. Holemon; and various other correspondence.

After plaintiff's response was filed, but before the hearing on defendant's motion for summary judgment, plaintiff received Defendant's Supplementary Response to Plaintiff's First Set of Interrogatories, which disclosed that since the inception of the sick leave policy, two other teachers had applied for and received sick leave coverage under the policy. At the hearing on the motion, plaintiff brought the new information before the court, requested additional time to conduct discovery, and supported defendant's previously filed motion for a continuance. The trial court denied the motion for continuance, but ordered defendant to supply any requested documents by the end of the week, with which it complied. Plaintiff filed a Supplementary Response to defendant's motion for summary judgment supplementing her previous response in light of the new information, and on the same day, the trial court granted defendant's motion for summary judgment, without making findings of fact or conclusions of law. The docket sheet indicates that the judgment was entered before the receipt of plaintiff's supplementary response. Thereafter, plaintiff filed a motion to reconsider, supported by the 1991 guidelines, the requests of those other teachers and the Board's decisions in those cases. The motion was denied.

■ In her first point, plaintiff contends that the trial court erred in granting defendant's motion for summary judgment on plaintiff's breach of contract claim. She argues that genuine issues of material fact exist as to whether defendant breached its contract with plaintiff by (a) refusing to place plaintiff on extended sick leave pursuant to the policy when plaintiff met all the requirements listed in the policy; (b) appointing Committee after receiving plaintiff's extended sick leave request rather than prior to this receipt as is required by policy; (c) allowing Committee to create guidelines after receiving plaintiff's request rather than using previously created

guidelines as mandated by the policy; and (d) denying plaintiff's extended sick leave request pursuant to Committee recommendation, which was based on guidelines formulated specifically for plaintiff's application thereby preventing plaintiff from qualifying for the extended sick leave.

■ For plaintiff to succeed in her breach of contract claim, she must prove that (a) a contract existed with defendant; (b) plaintiff had certain rights and defendant certain obligations under the contract; (c) defendant breached the contract; and (d) plaintiff suffered damages therefrom. *Vandever v. Junior College District of Kansas City*, 708 S.W.2d 711, 716 (Mo. App.1986).

There is no dispute as to the existence of the contract or its incorporation of policy. Plaintiff had rights under the contract to request sick leave coverage and defendant the obligation to review such request in conformance with policy. Payments were "subject to request" after the employee has exhausted all of his or her sick days and ten days have passed without coverage. Plaintiff, at the time of her request, met these requirements. Defendant contends that because the decision of Board to grant a request is discretionary, plaintiff cannot show a contractual right. However, Board is bound by the contract and the policy incorporated therein, to comply with the requirements of the policy in exercising its discretion.

The policy unambiguously requires Committee to be appointed annually and that it establish guidelines which "shall be reviewed for the next school year by the July 1 date of the new contract year." Here, there is no dispute that Committee was formed after plaintiff made her request and the guidelines applied to her case were formulated following her request rather than reviewed before July 1, thus a breach of policy which was incorporated in the contract.

The undisputed facts show that defendant randomly selected the members of Committee after her request, in violation of the policy. Plaintiff's husband was asked to choose a number and Superintendent Dr Lawrence counted down the list to find the person with the corresponding number, placing them on Committee.

Plaintiff contends that she was injured by Committee's adoption of guidelines after her request rather than before July 1 as required by the policy, because the guidelines established by the Committee were directed to her situation and request. Plaintiff also contends that the 1991 guidelines were in force when plaintiff made her request, and if Committee had applied the 1991 guidelines as it had in previous cases, her request would not have been denied. Defendant contended in its motion for summary judgment that the new guidelines were universal.

It may be reasonably inferred that policy's requirement that the guidelines be reviewed before the school year begins, was established to ensure that guidelines are not created in relation to a specific request to benefit or burden that request.

The depositions of the committee members indicate that the members of the committee were aware of plaintiff's situation when formulating the new guidelines. Martha Kay Richardson stated in her deposition that she was aware that plaintiff had been granted sick leave on other occasions, one of the new guidelines, and that was a factor in her determination to recommend denial of the request, although not a major one. Diane Campbell was asked in her deposition whether she knew, when preparing the guidelines, whether plaintiff had in the past few years taken sick leave in excess of the 10 allotted days, but she indicated that she had knew only in vague terms. Further, she noted that although she did not personally know that plaintiff worked at "School Spirit," a business outside of school, other members of Committee were aware of the fact and discussed it. Linda Ann Clark also indicated her awareness, when appointed to Committee, that plaintiff worked at "School Spirit."

The record also raises a question of fact as to whether some Committee members designed the new guidelines tailored to plaintiff's situation. In his deposition, Committee Chair Dan Busekrus was asked if he recalled anything specific that Dr. Lawrence told him that they would be doing as a committee and he responded "Basically our job was to establish criteria to make a decision based on Galinda's ..." The statement carries over onto page 9, which is not included in the record. However, a reasonable inference from this statement is that the criteria were established to make a decision based on plaintiff's situation. He did indicate later in his deposition, on page 18, that he believed that the first guideline, "information from the staff member's physician stating in general terms the medical condition," would be useful anytime anyone was applying for the sick leave policy. Diane Campbell indicated in her deposition that Committee did not discuss plaintiff personally when making the new guidelines, but rather made the guidelines and then applied them to plaintiff's case. There is a genuine issue of material fact as to whether Committee created the new guidelines tailored to plaintiff's situation and request. Thus, summary judgment in favor of defendant on Count I of plaintiff's petition was improper.

■ In her second point on appeal, plaintiff contends that the trial court erred in granting defendant's motion for summary judgment on plaintiff's actions for declaratory judgment that defendant acted in an unreasonable, arbitrary, capricious or unlawful manner and requesting injunctive relief. Plaintiff contends that defendant acted in an unreasonable, arbitrary, capricious or unlawful manner by: (a) refusing to place plaintiff on paid extended sick leave pursuant to the Policy; (b) appointing Committee after receiving plaintiff's extended sick leave coverage request rather than prior, thereby failing to follow the Policy; (c) allowing Committee to create its guidelines following the receipt of plaintiff's request, thereby failing to follow the Policy; (d) not requiring Committee to use previously established guidelines; and (e) following Committee's recommendation even though the reasons for the recommendation given either did not correspond to established guidelines or were not supported by information received by Committee.

■ We note that the contention that defendant's actions were arbitrary, capricious and unreasonable constitute a conclusion, not an issue of fact. *Bakewell v. MO. State Employees' Retirement System,* 668 S.W.2d 224, 227 (Mo.App. W.D.1984). However, as noted in our discussion of the first point, a genuine issue of material fact exists as to whether Committee formulated guidelines tailored to plaintiff's situation rather than universal guidelines, thus prejudicing her. That genuine issue of material fact permeates both points, making summary judgment improper.

JUDGMENT REVERSED AND REMANDED.

GARY M. GAERTNER, P.J. and JAMES R. DOWD, J., concur.