**Evelyn LOEFFLER, Appellant,**

v.

**CITY OF O'FALLON, Respondent.**

**No. ED 79314.**

Missouri Court of Appeals,
Eastern District,
Division One.

Feb. 19, 2002.

Rehearing Denied April 8, 2002.

Nathaniel M. Landman, St. Charles, MO, for Appellant.

Kenneth M. Lander, Molly A. Bollman, Kortenhof & Ely, P.C., St. Louis, MO, for Respondent.

PAUL J. SIMON, Judge.

Evelyn Loeffler (plaintiff) appeals the judgment of the St. Charles County Circuit Court, entered in favor of the City of O'Fallon (defendant) on its motion for summary judgment. On appeal, plaintiff contends that the trial court erred in granting defendant's motion for summary judgment because: (1) "plaintiff's action is based on inverse condemnation and therefore [the] ten year statute of limitations applies;" and (2) "plaintiff's action is timely even under a five year statute of limitations." We reverse and remand.

When considering an appeal from an entry of summary judgment, we review the record in the light most favorable to the non-movant. *Hubbard v. Lincoln Cty. R–III School Dist.*, 23 S.W.3d 762, 763 (Mo.App. E.D.2000). Our review is essentially *de novo*. *Id.* "The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially." *Id.* "The propriety of summary judgment is purely an issue of law." *Id.*

The movant's burden on its motion for summary judgment is to show a right to judgment flowing from facts about which there is no genuine dispute. *Id.* The movant may establish its right to summary judgment by showing: (1) facts that negate any one of the non-movant's element facts; (2) that the non-movant has not been able to produce and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of the non-movant's elements; or (3) that there is no genuine dispute concerning the existence of facts necessary to support the movant's properly pleaded affirmative defense. *Id.*

The non-movant must show by affidavit, depositions, answers to interrogatories, or admissions on file, that one or more material facts shown by the movant to be beyond any genuine dispute is, in fact, genuinely disputed. *Id.* at 763, 764. A "genuine issue" is a real, non-frivolous dispute, that exists " . . . . where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts." *Id.* at 764. A "genuine issue" is a dispute that is real and not merely argumentative, imaginary, or frivolous. *Id.*

We initially note that plaintiff failed to comply with the requirements of Rule 74.04(c)(2) in her response to defendant's motion for summary judgment in that she failed to specifically admit or deny the allegations in defendant's motion. Where a response to a motion for summary judgment fails to admit or deny each factual statement contained in the motion for summary judgment, we treat the factual assertions contained in the motion as true. *Rycraw v. White Castle Systems, Inc.*, 28 S.W.3d 495, 498 (Mo.App. E.D.2000). This is of no effect, however, as plaintiff's response merely re-alleges the facts labeled "undisputed" in defendant's motion.

The record in the light most favorable to plaintiff, the non-movant, reveals that on May 24, 1991, plaintiff signed a document entitled "Temporary Construction Easement" granting defendant an easement. In addition to printed terms, "Special Conditions" were handwritten onto the document and provided:

\* \* \*

(1) Flower bed to be protected by constructing a wood barricade around flower bed prior to construction.

(2) City shall connect owner's roof drain to storm drainage system during construction of this project.

(3) City shall be responsible for and promptly correct any water backup or any other problems resulting from construction of this project.

\* \* \*

City responsibilities under items 1, 2 and 3 shall not expire on completion of project.

\* \* \*

Defendant completed the construction project in May of 1992. Plaintiff thereafter noticed grading changes on her property and, throughout the fall of 1992 and

spring of 1993, poor drainage. In 1993, she notified defendant that her yard was "sinking." Over the next two years, plaintiff's property sustained damage consisting of poor drainage and "excess lateral hydrostatic pressure on walls, causing fractures and moisture intrusion in the basement of [her] home."

On March 14, 1994, plaintiff obtained a bid from Grabenhorst Grading to correct the drainage problem and forwarded it. On August 1, 1994, defendant's insurance company sent plaintiff a letter denying liability "for the items [plaintiff alleged]," but providing: "Should you produce documentation to support your allegations, we can re-evaluate this matter, and our position."

On October 4, 1996, defendant's "City Administrator" sent plaintiff a letter providing:

> [Defendant] has had an opportunity to review your request for compensation relating to improvements made during the [reconstruction]. Based upon a review of the information available, the city declines your request for payment.

On June 8, 1999, plaintiff filed a petition seeking monetary damages and alleging generally that she sustained damage as a result of the construction performed by defendant and that, under the May 24, 1991 "Temporary Construction Easement" document, defendant agreed to promptly correct any such damage. The petition further provided, "Private property shall not be condemned or damaged for public use without just compensation. Mo. Const. Art 1 Section 26."

Defendant answered denying the allegations of plaintiff's petition and alleging, as affirmative defenses, that (1) plaintiff's cause was barred by the applicable statute of limitations, Section 516.120 RSMo (2001) (all further references herein shall be to RSMo 2001 unless otherwise indicated);

(2) plaintiff's "negligence and failure to mitigate damages" contributed to her injuries thus barring recovery or mandating reduction; and (3) plaintiff failed to state a claim.

Defendant filed its Motion for Summary Judgment alleging that: (1) plaintiff's claim sounded in breach of contract and was barred by the five-year statute of limitations of Section 516.120; (2) "alternatively," plaintiff's claim was for negligence and barred by the five-year statute of limitations of Section 516.120; and (3) "alternatively," plaintiff's claim was for inverse condemnation and barred by the five-year statute of limitations of Section 516.120. In support of its motion, defendant relied on the pleadings, the deposition of plaintiff, plaintiff's answers to defendant's interrogatories, and an estimate from Grabenhorst Grading. Neither plaintiff's answers to defendant's interrogatories nor plaintiff's deposition appear in the record on appeal.

Plaintiff filed her response to defendant's motion for summary judgment, but did not admit or deny the allegations contained in defendant's motion; rather, her response reiterated the facts raised in defendant's motion, and added two additional allegations: (1) Plaintiff brought suit "to enforce her rights granted to her under the easement in which the municipality agreed to correct any damages to her property, and as such this claim is governed by [Section 516.110];" and (2) "Alternatively, plaintiff's action could be construed as an action against architects, engineers or builders of defective improvement to real property which is governed under Section 516.097."

Plaintiff also filed a cross-motion for summary judgment alleging that the facts labeled as undisputed in defendant's motion entitled plaintiff to relief, and submitted "Plaintiff's Suggestions in Response to

[Defendant's] Motion for Summary Judgment and in Support of Plaintiff's Motion for Summary Judgment." The suggestions indicated that plaintiff commenced her action against defendant "to enforce her rights under the construction easement," that the action was governed by the ten-year statute of limitations of Section 516.110, that plaintiff was "seeking enforcement of the terms of the contract," and that, "alternatively, Section 516.097 applies and plaintiff is bringing action within ten years of completion of improvements."

Defendant's motion for summary judgment was denied. Subsequently, defendant filed a motion for rehearing and reconsideration arguing that plaintiff's reliance upon *Linn Reorganized School District v. Butler Manufacturing*, 672 S.W.2d 340 (Mo. banc 1984), at oral argument was misplaced because, in *Linn*, the construction project was not completed when the school district first noticed faulty conditions. Here, the street improvement project was completed prior to plaintiff's first noticing damage to her property. Later, defendant filed its Response to Plaintiff's Cross Motion for Summary Judgment along with a supporting memorandum.

Plaintiff filed her Response to Defendant's Motion for Reconsideration in which she contended that: (1) her claim was for breach of contract; (2) the applicable statute of limitations was five years; (3) the triggering event that constituted the breach of contract was defendant's denial of responsibility for plaintiff's damages which occurred on August 1, 1994; and (4) suit was filed in June 1999, within five years of the event that caused the breach.

On September 27, 2000, the court granted summary judgment for defendant. The court adopted defendant's proposed findings of fact and conclusions of law and entered judgment on February 16, 2001 finding that: (1) plaintiff's petition sounded in breach of contract and that the five-year statute of limitations of Section 516.120 applied; (2) plaintiff's claim for damages "accrued at the earliest, when she first noticed the changes in the grading on her property in May of 1992, and at the latest, by May 14, 1994, when she obtained a bid to correct the water drainage problem in her front yard;" and (3) plaintiff's cause of action, filed on June 8, 1999, was barred by the five-year statute. The court further found that *Linn*, 672 S.W.2d 340, was distinguishable on the basis that it "involved a situation where a construction project was ongoing when the faulty condition was first noticed, whereas in this case, the construction project was completed when plaintiff noticed the first signs of problems due to the construction project."

Initially, we note that plaintiff's brief fails to comply with the requirements of Rule 84.04(a)(1) in that it does not contain a detailed table of contents with page references or an alphabetically arranged table of cases. Also, plaintiff's Points Relied On fail substantially to comply with Rule 84.04(d)(1). Finally, plaintiff's Statement of Facts contains no references to the legal file as required by Rule 84.04(i). We are, however, able to glean from plaintiff's arguments the issues on appeal; and in the interest of resolving the appeal on its merits, will proceed.

Since we find plaintiff's second point to be dispositive, we shall address it initially. In her second point, plaintiff alleges that her action was timely filed even under the five-year statute of limitations for breach of contract. She argues that the breach of contract occurred on October 4, 1996, when defendant refused her claim pursuant to the contract, that the statute of

limitations began running at that time, and that therefore her petition was timely filed.

Defendant, relying on Section 516.100, contends that the statute began to run when appellant ascertained the alleged damage to her property. Section 516.100 provides:

Civil actions, other than those for the recovery of real property, can only be commenced within the periods prescribed in the following sections, after the causes of action shall have accrued; provided, that for the purposes of sections 516.100 to 516.370, the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage *resulting therefrom* is sustained and is capable of ascertainment, and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained.

[Emphasis added.]

It follows, according to defendant, that because plaintiff's property sustained damage and such damage was capable of ascertainment by May 14, 1994 at the latest, the statute began running by that time and plaintiff's suit was barred.

In *Ballwin Plaza Corp. v. H.B. Deal Construction Co.*, 462 S.W.2d 687 (Mo. 1971), our Supreme Court determined that in an action for breach of contract, the statute of limitations begins to run when the right to sue thereupon arises. In *Ballwin*, plaintiff and defendant entered into a contract in which defendant acted as general contractor in the construction of a plaza complex for plaintiff. *Id.* at 688. The contract, dated September 14, 1959, provided, in pertinent part:

It is understood that the cooling and heating capacities will be the same as specified and all work will be installed to give proper results and distribution.

* * *

[Defendant] shall remedy any defects due thereto and pay for any damages to other work resulting therefrom, which shall appear within a period of one year from date of substantial completion.

*Ballwin* at 688, 689.

Defendant later wrote a letter to plaintiff which provided that, in accordance with the contract, "we hereby guarantee to remedy any defects due to faulty materials or workmanship which may appear within a period of one (1) year from date of May 1, 1961." *Id.* at 689. The air-conditioning and heating systems were installed by March of 1961 and, thereafter, difficulties ensued. On September 9, 1966, plaintiff filed a claim for breach of contract.

In determining the date the statute of limitations began to run, the Court held that it was "abundantly clear" that plaintiff's cause of action did not accrue until May 1, 1962. *Id.* at 689. "Between May 1, 1961, and May 1, 1962, defendant was obligated to correct any defects which developed on the job.... Any breach of the contract would have occurred on May 1, 1962, if the air-conditioning system was not properly operating at such time, if it was the result of poor workmanship, and *if it had not been corrected by defendant by such time.*" [Supreme Court's emphasis.] *Id.* at 689, 690. The Court concluded that "a cause of action accrues, and limitations thereon begin to run, when the right to sue arises." *Id.* at 690. See also *Real Estate Investors v. American Design Group, Inc.*, 46 S.W.3d 51, 59 (Mo.App. E.D.2001) (cause of action for breach of contract does not accrue until after the contract is breached); *Linn Reorganized School District v. Butler Manufacturing*, 672 S.W.2d at 344 (statute of limitations does not begin to run in a contract action until the

time allowed for correction of defects has passed); *Davis v. Laclede Gas, Co.,* 603 S.W.2d 554, 555 (Mo. en banc 1980) (contract action ordinarily accrues upon defendant's failure to do the thing at the time and in the manner contracted, and a statute of limitation begins to run when a suit may be maintained therefor); *Nuspl v. Missouri Medical Insurance Co.,* 842 S.W.2d 920, 922 (Mo.App. E.D.1992) (cause of action for breach of contract accrues upon defendant's failure to perform at the time and in the manner contracted, and statute of limitations begins to run when suit may be maintained).

 Here, as in *Ballwin,* defendant entered into a contract with plaintiff whereby defendant was to remedy any defects following construction. Unlike *Ballwin,* however, defendant's obligation in this case was not limited to one year: The contract set no expiration date. In *Ballwin,* the Court stated: "Plaintiff should not have filed suit against defendant for damages from any such defects during such period of time without first giving defendant the opportunity to correct defects under the terms of the contract between the parties." *Ballwin* 462 S.W.2d at 690. Here also, plaintiff should have given defendant an opportunity to correct any defects in accordance with the terms of the contract before filing suit. Thus, the statute of limitations began to run when defendant, following plaintiff's notification, refused to "be responsible for" and correct any water backup or other problems "resulting from construction of this project." Said responsibility was not to expire upon completion of the project.

We recognize a line of cases which stand for the proposition that, in certain instances, a plaintiff need not give a defendant an opportunity to correct defects. See *Miller v. Bakken,* 978 S.W.2d 518 (Mo.App. W.D. 1998); *Dynacon Builders v. Janowitz,* 892 S.W.2d 807 (Mo.App. W.D.1995); *Arst v. Max Barken, Inc.,* 655 S.W.2d 845 (Mo. App.1983). However, these cases are distinguishable in that they do not contain a similar contractual provision.

Therefore, the statute of limitations on plaintiff's breach of contract claim began to run, at the earliest, on August 1, 1994, when plaintiff received a letter from defendant's insurance company denying liability for the "items [plaintiff] alleged," but allowing plaintiff to submit additional documentation, or, at the latest, on October 4, 1996, when plaintiff was notified by defendant that it declined her "request for payment." Since plaintiff filed her action on June 8, 1999, it was timely under the five-year statute, Section 516.120, and the ten-year statute, Section 516.110.

Judgment reversed and remanded.

WILLIAM H. CRANDALL, JR., P.J., and ROBERT G. DOWD, JR., J., concur.